TAYLOR WAGNER, RESPONDENT, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, APPELLANT.*

Springfield Court of Appeals. Opinion filed July 12, 1929.

*Corpus Juris-Cyc References: Master and Servant, 39CJ, section 1061, p. 845, n. 31; section 1209, p. 989, n. 29; section 1291, p. 1099, n. 73; Trial, 38Cyc, p. 1543, n. 68.

*E. T. Miller* and *Ward & Reeves* for appellant.

866

*B. L. Rinehart* and *J. N. Burroughs* for respondent.

BAILEY, J.—This is an action for damages for personal injuries sustained by plaintiff while in the employ of defendant railroad company. The accident which gave rise to plaintiff's injuries occurred on a railroad bridge of defendant where plaintiff was employed as a bridge carpenter. It is alleged in plaintiff's petition that on the 22nd day of April, 1926, he was working on defendant's bridge under the direction of defendant's foreman and engaged in interstate commerce, labor and work; that while exercising due care for his own safety, one Harry Smith, a fellow servant, carelessly and negligently injured plaintiff; that "The said Harry Smith was then and there engaged in pushing a crab car along and on top of said bridge on the line of track laid thereon and the plaintiff was engaged in boring holes through timbers on top of said bridge and within said trackway; that when plaintiff was notified of the approach of said car he ceased his work as quickly as possible and stepped to the side of the track and on the guardrail and to a place of safety from being struck by said car; that the said Harry Smith as the agent, servant, and employee of the defendant negligently and carelessly failed to stop or fall back or to step off said guardrail as said car approached and passed by the plaintiff, but negligently and carelessly continued to advance on said guardrail, though there was not room for him to pass plaintiff on said guardrail, and in doing so, the said Harry Smith negligently and carelessly struck plaintiff with his body and person and knocked plaintiff off his balance and off said bridge which was twelve or fourteen feet in height from the ground below, and through the negligence and carelessness of the defendant, its agent, servant and employee in advancing on said guardrail and in striking the body of plaintiff with his own body as aforesaid, the said Harry Smith thereby caused himself to fall off said guardrail and bridge immediately following the fall of plaintiff and to fall upon plaintiff after

he had lighted on the ground, and struck the side of plaintiff with his feet, body and person, and thereby inflicted upon plaintiff injuries of the most severe and permanent character, which could and would have been avoided had said Harry Smith exercised ordinary care and prudence for the safety of plaintiff, by stopping or stepping off the platform or guardrail as the said car approached or passed by the plaintiff.''

The defenses pleaded in the answer are assumption of risk, contributory negligence, accident and written release and settlement. On trial to a jury the verdict was for plaintiff in the sum of $5000 and defendant has appealed.

This court rendered an opinion but sustained a motion for new trial for the reason the personnel of this court had changed since the case was submitted. We find no sufficient reason for receding from our former view of this case. It is charged that the court erred in refusing defendant's instruction in the nature of a demurrer to the evidence offered at the close of the whole case. The evidence most favorable to plaintiff, together with all reasonable inferences in his favor that may be fairly deduced therefrom, must be accepted as true in considering this demurrer.

Plaintiff was about forty-four years of age. He was a farmer and also a railroad carpenter, in which latter capacity he was employed by defendant in April, 1926, when he was injured. He had worked for defendant for several years prior to April, 1926, but not continuously. Plaintiff was injured while working on a bridge of defendant's and the injury resulted from his being knocked from the bridge by a fellow workman who, at the time, was assisting other workmen in pushing a crab car on defendant's track at that point.

Plaintiff testified on direct examination as follows:

''We were working on a bridge, and I never measured it; I judge it was twelve or fourteen feet high, I was working on. I was boring an anchor bolt hole on the inside of the track, with an auger on the inside of the track, and they holloed, 'Look out, here comes the push car. Look out for the car.' I went to pull my auger out, and it was plugged; I pulled my auger out and stepped to the side on the guardrail to let the car go by, and a man by the name of Harry Smith, walking along on the outside of the push car and pushing the car, bumped against me, and I fell off; he fell with his feet in my right side. I fell in the mud and water, fell clear off the bridge in the mud and water. I fell on my left side; Smith fell on me, striking me in the right side here. The car had some stringers on it; stringers are cords to put on the bridge, big timbers sticking out in front of the car. When I got my auger out these timbers were right up close to me; this guardrail sets out fourteen inches and five-eighths from the steel rail, from the inside edge. The guardrail is eight inches wide.

The out edge of the guardrail would be something like twenty-two inches and a fraction, from the steel. I stepped on the left-hand side of the guardrail; there is room for the car to pass when one stands on the left-hand side of the guardrail. *I was standing with my back rather toward the car as it approached. I stepped out on the guardrail with my face like that (indicating), from the track, facing out from the bridge.* The front end of the timbers passed me, but neither they nor the car touched me; the car was going on by, but Harry Smith bumped against me and I fell off the bridge, then he fell on to me. He walked up against me (witness rises to his feet), and he bumped up against me and put me out of balance and I fell right on my left side—he fell right on my right side. The way those cars are built, when they have this machinery on the right-hand side, there isn't room to stand on the right-hand side of the guardrail.

"Q. Tell the jury whether or not it was the custom for the men to step upon the guardrail to let the crab car pass? A. Yes, sir."

George Burroughs, plaintiff's witness, testified that he had worked as a section hand; that there was a guardrail on all railroad bridges he had seen; that the guardrail is eight inches wide; that a "crab car" runs on the track and that it is possible for a man to stand on the guardrail and let a crab car pass on the track without being knocked off. On cross-examination he testified that he never saw the bridge in question; that "the guardrails that I have seen on railroad bridges were so located that a crab car couldn't very well pass a man unless the man was standing perfectly straight on the guardrail; if a man was on the side of the car there wouldn't be any room. I don't know as I ever saw one or two crab cars with a bull wheel on the side of it."

Paul Praty testified that it was possible for a man to stand on the guardrail and a crab car pass him. On cross-examination he testified the car in this case had a bull wheel on the side and sometimes men walk along the side and operate it and that under such circumstances there is no room to pass a man safely on the guardrail; that there was about fifteen inch clearance between the bull wheel and the guardrail; that, "If the car was going in a slow walk the man who undertakes to get out of the way could walk also on the end of the bridge, or he could walk fast and get down on a cap sill; the cap sill is a safer place; I don't suppose it would be the safest place to try to stand on the guardrail when the car is passing, but I have seen it done; they will take chances." He further testified that "The man pushing the crab car, there is nothing to keep him from stopping before he hits the men on the guardrail. There is room to walk between the outside rail of the track and the guardrail; if a man is on the guardrail he could step off from the guardrail between the guardrail and the track; there is plenty of room there."

Roy Tetrick testified he was a bridge carpenter and had worked with plaintiff; that he supposed the guardrail was about eighteen inches or two feet from the track; that "there just barely is room enough for a man to stand on the guardrail and let these crab cars pass by him; I have seen it done lots of times; different times we would all stand on the guardrail lots of times and a car would pass, but we had to be careful and watch our business when they would pass." He testified on cross-examination that a man walking on the bridge, when he undertakes to get out of the way of the car generally goes to these vent caps and that is what they are supposed to do. He further testified that "These vents otherwise referred to as vent caps are every ten feet along that bridge; and each one of these sills forms two caps that is on each side of the railroad track; each piece of timber that forms a vent cap forms two vent caps, one on each side of the track. So that if one is in front of the car when it is moving, one can go one way to one vent cap and the other one can go to the left and right, and if they didn't want to do that they could take a few steps to another set of vent caps. These cars always go as slow as a man walks; these cars are not operated by steam or gasoline, they are pulled, but none of the cars stand on the bridge. On this occasion, when it is loaded, and the men pushing them they go in a slow walk. I now say it is close for a man to stand on the guardrail and permit a man to pass; there is not room for a man to walk along on the ties between the ties and the guardrail."

Lloyd Stewart testified for defendant as follows:

"I was working on this bridge gang when the plaintiff fell off the bridge; I was working on the crab car at the time, helping push the loaded car. I was walking on the back end, and the Smith boy was on the side of the car. *He was working the dog, the dog wheel, that holds the car down. That was the place that one man was supposed to walk: he walked on the side of the dog where the dog wheel is.* In operating that car they walked in both places, on the guardrail and on the tie between the guard and the ties. When you are nearing the place where the car is going to stop, the fellow who operates this wheel stands with one foot on the guardrail and one foot on the tie to get ready to dog the car."

He further testified that the car didn't go very far after plaintiff was struck, "about five feet; they unloaded the stringers there."

The foregoing excerpts from the testimony of witnesses constitutes the high points as to the facts and circumstances surrounding the accident. Defendant also introduced in evidence a statement signed by plaintiff in which plaintiff stated, among other things, that he did not get on a cap because it was occupied by another workman and he (plaintiff) then "whirled around and stood on the guardrail to let the car pass." Plaintiff lays great stress on this evidence. We might

say here that in our opinion this statement adds little, if any strength, to plaintiff's case. Ordinarily the approach of this slowly moving crab car pushed along by plaintiff's fellow workmen would not present a dangerous situation with which plaintiff would be suddenly confronted thereby requiring that he "whirl around" in order to extricate himself from such danger. If, however, he waited after timely warning, until the crab car was right upon him before attempting to reach a place of safety, he would himself be responsible for the dangerous situation. He could move as fast or faster than the crab car, and if the cap nearest him was occupied due regard for his own safety required that he walk on until he reached a cap that was unoccupied.

As we view this evidence plaintiff had timely warning of the approach of the car. It seems his auger stuck in the hole he was boring and he spent a few moments in pulling it out. He certainly was not required to stay with that auger in order to extricate it, if by so doing he placed himself in danger of being run down. To do so was negligent. As the car approached he could do one of three things, i. e., (1) Walk ahead to the end of the bridge; (2) step off onto a cap, or (3) stand on the guardrail. The first two alternatives were safe. The last alternative was not safe, but required the exercise of great care in order to avoid being struck because of the short space between the guardrail and the track. Plaintiff adopted the unsafe course. He stepped on the guardrail of the bridge with his back toward the crab car. He apparently made no attempt to see the car or observe any projections that might be extending therefrom. For that reason he failed to see Smith walking back of the "bull wheel" on the side of the car. That plaintiff was guilty of contributory negligence is beyond dispute. But the Federal Employers' Liability Act (U. S. Comp. Stat., secs. 8657-8665) under which this action is brought, eliminates contributory negligence as a defense, except in so far as it may be considered in mitigation of damages.

Defendant insists, however, that plaintiff was guilty of such gross negligence as to constitute it the proximate cause of the injury. The Federal rule as to contributory negligence seems to exonerate the master only when the servant's act is the sole cause of the injury and the act of the master or its servants is no part of the causation. [Grand Trunk Western R. Co. v. Lindsay, 201 Fed. 836; Ellis v. Louisville Ry. Co., 155 Ky. 745, 160 S. W. 512.] The alleged negligence of defendant's employee, Smith, whose collision with plaintiff caused them both to fall, is relied upon by plaintiff. That phase of the case will therefore be considered.

The plaintiff was bound to prove negligence on the part of the defendant or its servants and that such negligence contributed to cause the injury, before he was entitled to recover. [Seaboard Air Line Ry. Co. v. Horton, 233 U. S. 492, 58 L. Ed. 1062, L. R. A. 1915C, 1.]

In the case of Toledo, St. L. & W. R. R. Co. v. Allen, 72 L. Ed. (U. S.) 267, which originated in this State, plaintiff was a car checker. While working at night in defendant's railroad yards he was struck by a car on one of the switch tracks, shunted without warning along a track adjoining the one on which he was known to be at work. The Supreme Court of the United States stated that, "The work of checking cars in a yard at night where switching is being done is necessarily attended by much danger. But fault or negligence may not be inferred from the mere existence of danger or from the fact that plaintiff was struck and injured by the moving car. Defendant did not owe to plaintiff as high a degree of care as that due from carriers to their passengers or others coming on their premises for the transaction of business. The reason for the distinction is that plaintiff's knowledge of the situation and the dangers existing because of the narrow space between the tracks was at least equal to that chargeable against the defendant. [Missouri P. R. Co. v. Aeby, 275 U. S. —, 72 L. Ed. (U. S.) 159 (1. c. 268-9).]"

In the case at bar the employee Smith was at a place where in the proper operation of the "bull wheel" he might be expected to be. This wheel was at the side of the car and Smith was there, helping push the car slowly along the track and over the bridge. It seems unreasonable to say that Smith was under a greater duty to watch out for plaintiff's safety than plaintiff was himself. This slowly moving car was not particularly dangerous if workmen took proper precaution to step out of the way on its approach and into a place of safety. Smith no doubt heard the cry of warning the same as plaintiff testified he, himself, did. He had a right to assume that such warning would be heeded. He was under no duty to keep a watch for plaintiff. There is no evidence that Smith actually saw plaintiff. In fact if plaintiff acted as quickly as he says he did in whirling around on the guardrail, it is doubtful if Smith could have seen him in time to have comprehended the situation. At least we cannot infer negligence from the fact that Smith might have had an opportunity to see him. Moreover, the very fact that Smith also fell gives rise to an inference that he failed to see plaintiff standing on the guardrail. There is no evidence as to what Smith actually did. In so far as this record shows he may have stumbled, slipped or fallen against plaintiff. We are therefore of the opinion there was an entire failure of proof of actionable negligence.

Plaintiff was familiar with the method of pushing this crab car across the bridge and well knew what he should do to reach a place of safety. He knew or should have known, that it was dangerous to stand on the guardrail and permit the car to pass under the circumstances with but a very short space between him and the car. With such knowledge he stood on the guardrail with his back to the

car, making no attempt to look out for his own safety. He was warned in time to have reached a place of safety, but instead assumed a dangerous position. Under such circumstances, the dangers were obvious and should have been fully appreciated by him. In other words, we believe plaintiff assumed the risk when he stood on the guardrail. [Toledo, St. L. W. Ry. Co. v. Allen, supra; Chesapeake v. Nixon, 271 U. S. 218, 70 L. Ed. 914; Pryor v. Williams, 254 U. S. 43, 65 L. Ed. 120; O'Dell v. St. L.-San F. Ry. Co., 281 S. W. 456; Quigley v. Hines, 291 Mo. 23, 235 S. W. 1050.]

In view of the foregoing, other alleged errors need not be considered. The judgment should be reversed. It is so ordered.

*Cox, P. J.*, and *Smith, J.*, concur.