## Harry C. Johnson, Appellee, v. Henry A. Scandrett et al., Appellants.

### Gen. No. 39,998.

Opinion filed June 30, 1938.

M. L. BLUHM and BRUCE S. PARKHILL, both of Chicago, for appellant; C. S. JEFFERSON, of Chicago, of counsel.

ROYAL W. IRWIN, of Chicago, for appellee.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

Defendants appeal from a judgment of $25,000 entered upon a verdict of a jury in an action brought by plaintiff on account of personal injuries sustained by him while employed by defendants as a bridge

carpenter. The accident happened on the morning of March 18, 1936, in the daytime of a clear sunshiny day. Plaintiff, while carrying a bridge timber to be used in one of defendants' bridges, stepped in front of one of defendants' passenger trains, receiving serious injuries.

Defendants own and operate a line of railroad; the Dubuque Division runs southerly on the west side of the Mississippi river through Marquette, Iowa, which is a small village on the west side of the Mississippi; here the Dubuque division is crossed at approximately right angles by the Madison Division of defendants' road. The Dubuque Division at this point consists of a main line track with a passing track over a mile long east of the main track. The Madison Division is a single track railroad going eastward across the Mississippi river on a pontoon bridge. There is a concrete highway running north and south, about 86 feet west of and parallel to the Dubuque line; from the intersection of the Dubuque line and the Madison line to the west end of the Mississippi river bridge is 98 feet. The Marquette depot is located on the Madison line, about half a mile west of the intersection of the Madison and Dubuque lines, and two "Y" tracks connect the Dubuque line with the Madison line and the depot—one from the south and one from the north; trains on the Dubuque line stopping at the Marquette depot use these "Y" tracks to reach the depot and then back out onto the main line, resuming their journey; from the intersection of the railroads to the switch of the south "Y" is 540 feet; from the intersection the view to the south along the Dubuque line is entirely open and unobstructed.

Defendants were engaged in repairing the Madison line bridge across the Mississippi river and for this purpose had piles of lumber about two feet in height

lying in the southwest angle made by the intersection of the 2 roads. Plaintiff with others was working on the west end of the bridge and went to get a bridge timber from the pile of lumber for use on the work of the bridge; to do this he walked westward, crossing the Dubuque line, and was at the pile of timber 5 or 10 minutes; a passenger train, consisting of a locomotive and 2 cars, had come from the south on the Dubuque line and had gone to the Marquette depot over the south "Y" track; after stopping at the station the train backed out over the same "Y" track to the connecting switch with the Dubuque line, 540 feet south of the intersection with the Madison line; after reaching the Dubuque line the switch was lined and the train proceeded in a northerly direction, going about 8 to 10 miles an hour; at the same time plaintiff placed a timber about 6 x 8 and 54 inches long on his right shoulder and started to walk eastward toward the bridge.

Plaintiff says he looked north when he was 7 to 10 feet from the Dubuque track and then went on; he did not look south at any time; he says that if he had looked south he would have seen the approaching train; he walked directly in front of it and was struck. The fireman had started firing as the train left the switch at the "Y" and did not see the accident. The engineer was on the east side of the engine and it was impossible for him to see plaintiff approaching from the west.

There is much testimony as to whether a bell was rung or whistle sounded as the train approached the Madison track intersection. Plaintiff testified he did not hear the train or any whistle or bell. Other witnesses testified that they heard the train whistle as it started from the "Y" to go north, and members of the train crew testified that the bell was ringing automatically.

The suit was brought under the Federal Employers' Liability Act. Counsel for plaintiff argues that the undisputed evidence shows that the fireman knew that persons crossed the Dubuque tracks at this point and it was his duty to look out for them as much as possible, and that if he had been sitting in his usual seat instead of firing the engine he would have seen plaintiff. It is said that this failure to keep a lookout was actionable negligence on the part of the defendants, causing the accident in question. Defendants' counsel argue to the contrary.

We do not deem it necessary to pass upon the question of the defendants' negligence as we are of the opinion that plaintiff assumed the risk of the injury in question and hence cannot recover.

In *Seaboard Air Line Ry. v. Horton,* 233 U. S. 492, 504, the general rule was stated that a workman of mature years must be held to assume such risks or dangers as are necessarily incident to his occupation. And in *Hoch v. St. Louis-San Francisco Ry. Co.,* 315 Mo. 1199, it was held that the defense of assumption of risk may be interposed, even though the master has been negligent, where the risk was so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated it. This statement is supported by a large number of cited cases. In *Toledo, St. Louis & Western R. Co. v. Allen,* 276 U. S. 165, a car checker was struck by a car shunted upon him without warning. It was held that he assumed the risk, knowing that such cars were likely to be moved without warning. The court held the record failed to show that plaintiff was in any danger other than such as was usually incident to his employment.

In the instant case the train was operated in the usual manner and plaintiff had seen trains moving on this track and had stood beside the track the day

before the accident and watched this particular train pass. His work required him to cross and be on both tracks and the bridge, and it follows that the risk of being struck by a passing train was an ordinary risk of his employment.

Plaintiff was not an inexperienced employee; he had been working as a bridge carpenter for 10 years in and about railroad tracks. He testified that while employed in such work he had to watch out for passing trains; he had been working at Marquette, where the accident happened, about two weeks prior to the accident. In common with all other employees working on the tracks and bridges of defendants, plaintiff was thoroughly familiar with a rule of defendants touching the duty of employees to watch for trains. This rule is as follows:

"Don.'t depend upon others to warn you of the approach of trains, cars or vehicles. They may be expected from any direction at any time. Always be on the lookout. At the approach of trains employees will stand back on the same side, at least fifteen feet from the track until the train has passed. On double track, do not stand on the other track while trains pass. Get off the track promptly upon the approach of trains and do not linger until the engineer has to whistle for you to get off." Plaintiff had a copy of and was familiar with this rule at the time of the accident. The rule warned plaintiff of the danger he incurred in crossing tracks, and by continuing his employment, subject to this rule, he assumed the risk of being struck by a train.

It has been held in many cases that employees engaged in keeping tracks in repair assume the risk of being struck by trains. In *Chesapeake & Ohio Ry. Co. v. Nixon*, 271 U. S. 218, it was held that such an employee must rely on his own watchfulness to avoid

trains. Counsel for plaintiff argues that plaintiff was not engaged in maintenance of right of way and that this rule does not apply to him as a carpenter repairing bridges. In *Central Vermont Ry. v. Sullivan*, 86 F. (2d) 171, it was held that a trackman on a bridge had assumed the risk. In *Ward v. Maine Central R. Co.*, 132 Me. 88, the employee was engaged in the construction work on a bridge on defendant's lines; he was struck and killed by a passing train. It was held that his knowledge of the danger incident to the situation made it unnecessary for him to be warned, and that he assumed the risk. *Wagner v. St. Louis-San Francisco Ry. Co.*, 223 Mo. App. 864, 19 S. W. (2d) 518, 521, 522, involved a bridge carpenter struck by a car; judgment for plaintiff was reversed, the court holding he had assumed the risk. In *Feurt v. Chicago, R. I. & P. Ry. Co.*, 178 Minn. 395, 399, the employee was also a bridge carpenter, working on a bridge of the defendant; he was struck by a passenger train; judgment for plaintiff was reversed with directions to enter judgment for the defendant on the ground the employee assumed the risk.

It is not important that plaintiff was injured some short distance from the bridge. His work required him to cross defendants' tracks to get the piece of bridge timber to be used on the bridge. This was part of his work as a bridge carpenter. *Carfelo v. Delaware, L. & W. R. Co.*, 54 F. (2d) 475, 477, is precisely in point, where the court said: "The fact that he happened to be at a path across the track when he was injured did not decrease this risk which plaintiff assumed, for he must be treated as still at work when there. . . ." Other cases hold that the employee assumed risks which are open and obvious and could have been discovered in the exercise of ordinary care and prudence. *Southern Pac. Co. v. Berkshire*, 254 U.

S. 415; *Chesapeake & Ohio Ry. Co. v. Leitch*, 276 U. S. 429; *Biernacki v. Pennsylvania R. Co.*, 45 F. (2d) 677; *Kawacz v. Delaware, L. & W. R. Co.*, 259 N. Y. 166. It should be remembered that plaintiff himself testified that if he had looked in the direction of the approaching train he would have seen it, but that he did not look in that direction.

Plaintiff says that he was misled by the 2 tracks at this point — the main track and the passing track — into thinking it was a double track railroad, and he therefore looked only to the north, from which direction he would expect a train to be approaching. The testimony of witnesses throws some doubt upon this statement. Trains operated on the main track in both directions. Plaintiff was experienced and had worked over tracks of the railroad for 10 years and on this particular division the previous year. Apparently all the other employees knew there was one main track and the other was a passing or switch track. But even if we accept plaintiff's statement, the rules, with which he was familiar, definitely ordered an employee, where there was a double track, not to stand on the other track while trains were passing, and the rule admonished employees to get off the track promptly when a train is approaching.

It has been held that an employee of a railroad may not rely upon trains coming upon a particular track from the usual direction. *Amoroso v. Baltimore & Ohio R. Co.*, 305 Pa. 195; *Winfree v. Seaboard Air Line R. Co.*, 199 N. C. 590; and in *Nardoni v. C. & E. I. Ry. Co.*, 261 Ill. App. 339, 345, where a track laborer was struck and killed by one of defendant's cars, it was argued for the plaintiff that the train was running northerly on a southbound track. It was held that it was the duty of deceased to have known that trains might be run in this manner and that the employee had assumed the risk, and the reviewing court affirmed the

action of the trial court in instructing the jury to find the defendant not guilty.

Other points are made which it is unnecessary for us to consider. We are of the opinion the evidence clearly shows that plaintiff assumed the risk of receiving the particular injury in question, and for this reason there can be no recovery from the defendants.

The judgment is therefore reversed without remanding.

*Reversed.*

MATCHETT and O'CONNOR, JJ., concur.