RUSSELL L. VANDERLEI, Plaintiff-Appellee, *v.* KEN HEIDEMAN, Defendant-Appellant.

Second District    No. 79-243

Opinion filed April 15, 1980.

Puckett, Barnett, Larson, Mickey, Wilson & Ochsenschlager, of Aurora (Bernard K. Weiler and Peter K. Wilson, Jr., of counsel), for appellant.

Andrew H. Marsch, of Wheaton, and William J. Harte, of Chicago, for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The question raised by this appeal is whether the owner of a horse is strictly liable under the Animal Control Act (Ill. Rev. Stat. 1977, ch. 8, par. 366) for injury to a hired horseshoer, who without provocation is kicked by the animal.

The plaintiff has been a licensed horseshoer since 1972 and has been actively engaged in the business of shoeing horses either on a full or part-time basis since that date. He travels to various farms or stables at the request of the owners of the horses and shoes or trims their horses for compensation on a per horse basis. He furnishes all the necessary equipment and personally performs all the labor.

At the request of the defendant, plaintiff visited the defendant's farm on August 13, 1977, and it was agreed that he would either trim or shoe from eight to 10 of defendant's horses and be paid for each horse shod or trimmed. Plaintiff trimmed the hooves of approximately seven to eight

horses. After completing that work plaintiff shod one other horse. He then proceeded to shoe defendant's stallion, "Ike," which he had trimmed but had not shod on prior occasions. After the plaintiff had completed placing the shoes on three of Ike's hooves and had a fourth shoe nailed on, the plaintiff reached down to lift the remaining hoof off the ground in order to clench the nails which had been used to attach the shoe to the horse's hoof.

Plaintiff was holding the left rear hoof of the horse along the inside of his knee when Ike kicked or jerked the hoof the plaintiff was holding, causing it to come in contact with the plaintiff's knee thereby injuring it.

Plaintiff brought the action against the defendant under the Animal Control Act; defendant filed an answer which denied the allegations and also raised the affirmative defense that defendant had assumed the risk of the injury pursuant to the employment contract entered into between the parties. The defense was dismissed on plaintiff's motion. At trial, the court refused to give instructions pertaining to the affirmative defense tendered by the defendant. The jury returned a verdict for the plaintiff assessing his damages at $32,000, from which the defendant has appealed.

Section 16 of the Animal Control Act states:

"If a dog or other animal, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be, the owner of such dog or other animal is liable in damages to such person for the full amount of the injury sustained." Ill. Rev. Stat. 1977, ch. 8, par. 366.

The question of "provocation" under the statute was submitted to the jury. The finding that the plaintiff did not provoke the animal is not against the manifest weight of the evidence. There is also no question but that plaintiff was lawfully and peaceably on the premises.

Plaintiff argues that the language of the statute is absolute except for the defenses set forth in its language. He argues that the legislature clearly intended to abolish any other defense. The essential question is whether the statute admits of any common law defense supported by the evidence.

■■ We approach the question of the legislative intent with reference to various rules of statutory construction. Where literal enforcement of the statute will result in great injustice which was not contemplated, we will construe the statute to give effect to what must have been reasonably intended by the legislature. (*McQueen v. Erickson* (1978), 61 Ill. App. 3d 859, 863.) A statute in derogation of the common law will not be construed as changing that law beyond what is expressed by the words in the statute or is necessarily implied from the language of the statute. (*Walter v. Northern Insurance Co.* (1939), 370 Ill. 283, 288; see also

*Barthel v. Illinois Central Gulf R.R. Co.* (1978), 74 Ill. 2d 213, 220.) There is a reluctance to find a legislative intention to impose strict liability unless the enactment is intended to protect a certain class of persons with relative inability to protect themselves. 74 Ill. 2d 213, 221.

It is true that the express language of the statute appears to be absolute. If one does not provoke the animal and is peaceably and lawfully on the premises the owner is liable for all damages proximately caused by his animal. Nevertheless, the statute has been held not to apply in several situations where the plaintiff has brought himself within its express terms. In *Bailey v. Bly* (1967), 87 Ill. App. 2d 259, the court refused to apply the statute to a woman who tripped over defendant's dog which lay down in front of her while she was carrying suitcases. The court reasoned that there must be behavior or activity on the part of the dog which caused the injury and that liability may not be imposed "as a pure penalty for dog ownership." (87 Ill. App. 2d 259, 262.) In *Steichman v. Hurst* (1971), 2 Ill. App. 3d 415, the court refused to bar recovery on the grounds of provocation although the mailman sprayed repellent at a threatening dog. In *McQueen v. Erickson* (1978), 61 Ill. App. 3d 859, we refused to apply the statute, despite the fact that the requirements were technically met, to a plaintiff who was injured when her car struck defendant's horses running at large on the highway. The specific question of whether the legislature intended to eliminate all common law defenses when it passed the statute has not been ruled upon previously, however.

■■ We cannot conclude that the legislature when it amended the so called "dog bite statute" to include other animals intended to abolish all common law defenses other than provocation by one peacefully and lawfully on the premises. It should be noted that provocation is an extremely limited defense, particularly when framed in the circumstances of this case. Provocation is not normally thought of in relation to acts which are performed on animals in furtherance of their normal care when performed in an acceptable and gentle manner. That care may involve sufficient discomfort to the animal that occasionally, even under the best of circumstances, it will cause injury.

Moreover, there is no social policy which would support holding the owner strictly liable against the class of persons such as this plaintiff. Licensed horseshoers as a class are trained to handle horses and may be reasonably presumed to know their normal propensities and to protect themselves against them. Plaintiff's own testimony in this case indicates that getting kicked is a "normal" risk for a horseshoer, and that this had happened to him personally on a number of occasions.

To preclude a common law defense such as assumption of risks

would, in practical effect, impose strict liability without a factual and reasonable basis "other than as a pure penalty for [horse] ownership." (*Bailey v. Bly* (1967), 87 Ill. App. 2d 259, 262.) Nothing in the language of the statute or in the history of the legislation makes it appear that the intent of the statute is to impose strict liability and to abolish the defense of assumption of risk. The statute was passed in 1949 to eliminate the prior knowledge requirement of the common law characterized as the "one-bite rule." (*Beckert v. Risberg* (1965), 33 Ill. 2d 44, 46.) It applied only to dogs. Under the common law negligence action, one who was injured by an animal could not recover unless he could prove that the animal had a dangerous disposition and that the owner knew of it. Under the statute one can recover without this proof. The statute, however, has been held not to repeal the common law action. (*Reeves v. Eckles* (1966), 77 Ill. App. 2d 408, 412.) The statute was amended in 1973 to apply to all animals that can be affected by rabies. Under the common law negligence action freedom from contributory negligence and assumption of risk were available defenses. It might be argued that the reference to "provocation" indicated a legislative intent to restrict the proof that defendant was not contributorily negligent. However, a similar argument cannot be made as to assumption of risk, which did not expressly appear as a defense in the statute in any form. If the statute were to be interpreted as creating strict liability whenever plaintiff is within its definition, there would appear to be no reason to retain the common law action. We therefore conclude that proof of assumption of risk is not precluded as a defense to an action brought under section 16 of the Animal Control Act.

■■ ■ In an employment setting it has been stated that the defense of assumption of risk may be interposed "where the risk was so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated it." (*Johnson v. Scandrett* (1938), 296 Ill. App. 198, 201.) "In its simplest and primary sense, assumption of risk means that the plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone." (Prosser, Torts 440 (4th ed. 1971).) When the parties have a contractual relationship with each other the doctrine of assumption of risk, although not favored in all cases, is particularly applicable. (See *Barrett v. Fritz* (1969), 42 Ill. 2d 529, 534.) It is based on the theory that a plaintiff "will not be heard to complain of a risk which he has encountered voluntarily, or brought upon himself with full knowledge and appreciation of the danger." (Prosser, Torts 523 (4th ed. 1971). See also Illinois Pattern Jury Instructions, Civil, No. 13.01 (2d ed. 1971).) Here, the

plaintiff was an independent contractor who entered into an employment agreement to perform services as a professional horseshoer. Clearly, and by his own testimony, he encountered the risk of being kicked while shoeing the horse voluntarily with full knowledge and appreciation of the danger. The doctrine has been applied to persons who by reason of being professionals are held to bear the risks of their profession. Thus, a jockey hired to ride in a single race was held to have assumed the risk of an injury caused by a fall in that race. (*Gray v. Pflanz* (1950), 341 Ill. App. 527, 532.) In *Barthel*, 74 Ill. 2d 213, 221, the fact that the statutory cause of action was based on proof of violation of Illinois Commerce Commission rules did not preclude the use of the common law defense of contributory negligence. And in *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 430, a products liability case charging strict liability in tort, it was held that assumption of risk may be asserted as a defense.

We therefore reverse the judgment. In so doing we have given consideration to the question of whether the case should be remanded for a new trial. Generally, assumption of risk is a jury question. (See *Stone v. Guthrie* (1957), 14 Ill. App. 2d 137, 150; *Olsen v. Pigott* (1963), 39 Ill. App. 2d 191, 199-200.) However, we conclude that in this case a new trial is not indicated. The plaintiff's own testimony shows that getting kicked is a "normal" risk which he envisioned as a horseshoer. He admitted that he had been kicked on several previous occasions and that twice before he had been kicked under circumstances similar to those involved here. He admitted that he had voluntarily entered into a contract with the defendant to shoe the defendant's horse, and by his own admissions it was known by himself and within his profession that horses will sometimes kick while being shod. We therefore reverse the judgment without remand.

Reversed.

UNVERZAGT and VAN DEUSEN, JJ., concur.