DONNA J. CLARK, Plaintiff-Appellant, v. JOHN C. ROGERS *et al.*, Defendants-Appellees.

Fourth District   No. 4—85—0236

Opinion filed October 7, 1985.—Rehearing denied November 13, 1985.

Gary F. Geisler, of Geisler, Waks & Geisler Law Offices, of Decatur, for appellant.

Marshall A. Susler, of Decatur, for appellee John C. Rogers.

Dunn, Goebel, Ulbrich, Morel & Hundman, of Bloomington (John L. Morel, of counsel), for appellee Wesley Cyrulik.

JUSTICE McCULLOUGH delivered the opinion of the court:

The plaintiff, Donna Clark, sued defendant John Rogers, under section 16 of the Animal Control Act (Ill. Rev. Stat. 1983, ch. 8, par. 366) for injuries allegedly caused by Rogers' horse. Plaintiff also sued defendant Wesley Cyrulik, on whose property the horse is boarded, under section 16 and a common law negligence theory. The plaintiff appeals from an order of the trial court granting summary judgment in favor of both defendants.

Rogers owned two stallions, one called Jet and the other named Ralph. In February 1982, Clark agreed to help Rogers train the stallions for horseshows. In return, Rogers agreed to pay board for Clark's mare at Cyrulik's farm. Rogers testified both horses were normally very gentle. Stallions, however, are excitable around mares and will try to get loose to get to a mare. Clark had been certified as a competent rider and instructor. She had previously been employed to break race horses. She had owned 50 horses, including one stallion, which she had broken herself. Clark knew stallions were very energetic and harder to control than other horses. They are more likely to buck and jump. She had been warned to be cautious when handling stallions. She knew stallions became excitable and hard to control around mares. Between February and May, Clark had ridden each stallion three or four times per week.

On May 4, Clark took Jet from his stall and placed an English saddle on him. An English saddle has no pommel and only a slight cantle. The horse did not stand still, but he did not seem extraordinarily skittish to Clark. Clark took the horse out of the barn and attempted to mount him. After placing her left foot in the stirrup and swinging her right foot over the horse, Jet started to jump. Clark decided to get off the horse and hold him so that he could not get to some mares on a walker nearby. She grabbed the horse around the neck and swung down, but the horse moved sideways, throwing her to the ground. Clark broke her left leg.

In her deposition, Clark testified she had learned from a conversation with both defendants that Cyrulik had used Jet to tease some mares earlier in the day. He had brought mares by the stallion's stall to see if they were ready to breed. Cyrulik denied this. He stated he had used his own stallion to tease a mare that day.

Clark brought a count against each defendant under section 16 of the Animal Control Act, which provides:

"If a dog or other animal, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be, the owner of such dog or other animal is liable in damages to such person for the full amount of the injury sustained." (Ill. Rev. Stat. 1983, ch. 8, par. 366.)

Clark also alleged Cyrulik had been negligent in failing to warn her that he had used the stallion to tease mares.

■ Cyrulik first maintains he was not an owner within the meaning of section 16.

" 'Owner' means any person having a right of property in a dog or other animal, or who keeps or harbors a dog or other animal, or who has it in his care, or acts as its custodian, or who knowingly permits a dog or other domestic animal to remain on or about any premise occupied by him." (Ill. Rev. Stat. 1983, ch. 8, par. 352.16.)

Thus, the keeper of an animal as well as its owner can be held liable under the Act. A keeper of an animal has been defined in terms of management, custody, care, or control. (*Heyen v. Willis* (1968), 94 Ill. App. 2d 290, 236 N.E.2d 580.) The plaintiff notes the horse was kept at Cyrulik's farm. She contends he, as well as Rogers, was liable under the Act. Following the plaintiff's argument, Rogers could recover from Cyrulik if he had been injured by his own horse. An owner can terminate the authority of a keeper at any time by removing the animal from the custody of the keeper. The moment that is done, the keeper's rights and responsibility concerning the animal are at an end. (*Janssen v. Voss* (1926), 189 Wis. 222, 207 N.W. 279.) Just as Rogers could terminate Cyrulik's responsibilities by taking custody of the horse, so could Clark as Rogers' employee. Cyrulik, therefore, was not an "owner" within the meaning of the Act at the time of the fall.

■ Both defendants raised the defense of assumption of the risk. The plaintiff contends the defenses in a case like this must be limited to those expressly stated in section 16. In *Vanderlei v. Heideman* (1980), 83 Ill. App. 3d 158, 403 N.E.2d 756, however, the court decided the defense of assumption of the risk could be applied under

section 16. The court noted nothing in the language or history of the statute indicated the legislature intended to impose strict liability and abolish the defense of assumption of the risk. The court held that to preclude such a defense would, in practical effect, impose strict liability without a factual or reasonable basis other than as a pure penalty for animal ownership. 83 Ill. App. 3d 158, 161-62, 403 N.E.2d 756, 758.

The plaintiff argues the defense, even if applicable, cannot be a complete bar to recovery. She notes the supreme court has stated the defense of assumption of the risk will not longer bar recovery in a product's liability case. Instead, the misconduct of the plaintiff is to be compared to that of the defendant in the apportionment of damages. (*Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 111-12, 454 N.E.2d 197, 204.) In a product's liability case, the defense arises when the plaintiff is aware of an unreasonable risk created by the defendant but voluntarily chooses to encounter it anyway. A different situation is presented when the plaintiff voluntarily enters into some relationship with the defendant knowing that the defendant will not protect him against future risks which arise from the relationship. In such a case, the risk of harm is not created by the defendant but is inherent in the activity which the plaintiff has agreed to undertake. The plaintiff is regarded as tacitly or impliedly agreeing to take his own chances such as where he accepts employment knowing that he is expected to work with a dangerous horse. This form of the doctrine is generally referred to as "primary" assumption of the risk. Under this form, the plaintiff has agreed to relieve the defendant of any duty. Unlike a product's liability case, where the fault of the plaintiff in choosing to encounter a risk can be compared to the defendant's fault for creating the risk, there can be no comparison in a "primary" assumption of the risk case because the defendant is not at fault. Thus, "primary" assumption of the risk remains a complete defense. Prosser & Keeton, Torts sec. 68, at 480, 496-97 (5th ed. 1984).

The *Vanderlei* court set forth the basis of the defense:

"In an employment setting it has been stated that the defense of assumption of risk may be interposed 'where the risk was so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated it.' (*Johnson v. Scandrett* (1938), 296 Ill. App. 198, 201.) 'In its simplest and primary sense, assumption of risk means that the plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to

do or leave undone.' (Prosser, Torts 440 (4th ed. 1971).) *** It is based on the theory that a plaintiff 'will not be heard to complain of a risk which he has encountered voluntarily, or brought upon himself with full knowledge and appreciation of the danger.' (Prosser, Torts 523 (4th ed. 1971). See also Illinois Pattern Jury Instructions, Civil, No. 13.01 (2d ed. 1971).) *** The doctrine has been applied to persons who by reason of being professionals are held to bear the risks of their profession. Thus, a jockey hired to ride in a single race was held to have assumed the risk of an injury caused by a fall in that race." 83 Ill. App. 3d 158, 162-63, 403 N.E.2d 756, 758-59.

■■ The plaintiff argues there was no employment relationship, but she herself described Rogers as her employer. She contends Cyrulik cannot assert the defense because she entered into no relationship with him. As Rogers' agent, however, Cyrulik would be entitled to the defense. An agent who is acting within his authority is entitled to the immunities of the principal which are not personal to the principal. 3 C.J.S. *Agency* sec. 379 (1973).

■■ The plaintiff contends she could not have assumed the risk when she did not know Cyrulik had used the stallion to tease mares earlier in the day. At most, the plaintiff's evidence demonstrates the stallion was exposed to mares earlier in the day and may have become excited. The plaintiff, however, could not have assumed the stallion would be insulated from mares when her own deposition indicates there were mares in the same barn with the stallion. Moreover, the plaintiff testified there were mares in the vicinity when she tried to mount the stallion. She knew a stallion could become excited and uncontrollable around mares, but she attempted to mount the stallion anyway. The plaintiff was a trained horsewoman. She accepted employment as a trainer of stallions knowing such horses were likely to buck or jump. Under these circumstances, we find the plaintiff assumed the risk of any fall.

For these reasons, the judgment of the trial court is affirmed.

Affirmed.

GREEN, P.J., and MORTHLAND, J., concur.