BRIAN T. HANKE, Plaintiff-Appellant, v. ORVILLE WACKER, d/b/a
Wacker's Hog and Grain, Defendant-Appellee.

Fifth District   No. 5—88—0799

Opinion filed July 2, 1991.

Edward J. Kionka, of Carbondale, for appellant.

Stephen C. Buser, of Freeark, Harvey, Mendillo, Dennis & Wuller, P.C., of Belleville, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Plaintiff-appellant Brian Hanke brought this action against his employer, Orville Wacker, d/b/a Wacker's Hog and Grain (defendant), to recover for injuries sustained when he was attacked by a boar. The jury returned a verdict in favor of the defendant from which plaintiff appeals.

Plaintiff began working on defendant's farm in 1979 as a hired hand, and shortly thereafter defendant began raising hogs. Defendant utilized several buildings in the hog operation, and one of these buildings was a sow house which contains several hog pens. The pens were built by defendant in 1980, and the ones relevant to this appeal were lined up side by side in the sow house. They were constructed of wood and fencing, and each pen contained a gate which opened up into a three- to four-foot-wide walkway. Each gate was secured by a "hook" and "chain."

From 1980 to 1982 defendant purchased 220- to 240-pound boars which were kept for approximately one year before being sold. Boars kept for that period weighed approximately 350 pounds. In 1983 defendant made the decision to keep the boars for two to three years, at which time they weighed from 450 to 750 pounds when sold. The pens constructed by the defendant in 1980 were designed to contain the smaller boars. Defendant did not upgrade construction of the pens when he began keeping the boars longer, even

though several individuals informed him of the need to do so. When the pens were damaged, they were not repaired with new material.

One of the plaintiff's duties on the farm was to move the boars from one pen to another. Plaintiff would accomplish this task by using a "push board." A push board is a piece of plywood two feet by three feet with handles on each end. The push board is placed in the hog's path when it is necessary to make the hog change directions.

On May 15, 1985, plaintiff was in the process of moving a boar. He let the boar out of its pen and into the walkway. While plaintiff was closing the gate, the boar moved down the walkway a short distance. When plaintiff looked up, he saw this boar and a second boar which was still in its pen "going at it like cats and dogs." Before plaintiff could get down to them, the second boar broke out of its pen and began fighting with the boar in the walkway. Apparently the commotion stirred up other boars which also broke out of their pens, although only two of the boars were actually involved in the fight. Plaintiff attempted to separate the boars by using the push board, but the boars knocked him down, apparently injuring his right knee.

After the incident, plaintiff and defendant discovered that the boar had broken some of the boards used to construct the pen and had also broken the chain on the gate. Evidence was also presented which indicated that plaintiff had been injured by hogs on prior occasions.

Defendant argued at trial that plaintiff assumed the risk of being injured by the hogs and was, therefore, barred from recovery. Over plaintiff's objection, the trial court submitted instruction No. 13.02 (Illinois Pattern Jury Instructions, Civil, No. 13.02 (2d ed. 1971)) to the jury. The instruction provides as follows:

> "The defendant has raised the affirmative defense that the plaintiff assumed the risks of injury from the dangers which the plaintiff contends caused his injury. To prove that defense the defendant has the burden of proving each of the following propositions:
>
> First, that the plaintiff was the employee of the defendant.
>
> Second, that doing work of this kind would ordinarily involve certain dangers.
>
> Third, that the plaintiff knew these dangers existed and realized the possibility of injury from them, or in the exercise of ordinary care would have known the dangers ex-

isted and realized the possibility of injury from them, and entered into the employment voluntarily.

Fourth, that one or more of these dangers were the cause of the plaintiff's alleged injuries.

If you decide that each of these propositions has been proved, then your verdict should be for the defendant. If, on the other hand, you decide that any of these propositions has not been proved, then the defendant has not proved the affirmative defense of assumption of the risk."

As noted above, the jury found in favor of the defendant.

The sole issue raised by plaintiff on appeal is whether or not the submission of the instruction set forth above was proper. Plaintiff contends that the instruction was improper because the risk of injury in this case was created by the defendant's negligence. Plaintiff asserts that under these circumstances, the defense of assumption of the risk is a damage-reducing factor only and should not be a complete bar to recovery. Defendant asserts that the instruction was proper, and he also contends that we need not address this issue because plaintiff failed to preserve it for appeal. Defendant asserts waiver because plaintiff failed to tender an alternative instruction at the instruction conference and failed to insure that his objection was contained in the report of proceedings of the instruction conference and because plaintiff's post-trial motion did not comply with Supreme Court Rule 366(b)(2)(iii) (134 Ill. 2d R. 366(b)(2)(iii)) and section 2—1202(b) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1202(b)). We shall address the waiver issue first.

■■ Defendant cites Supreme Court Rule 239(b) (134 Ill. 2d R. 239(b)) in support of his contention that plaintiff has waived the issue on appeal by failing to tender an alternative instruction at the instruction conference. Rule 239(b) provides as follows:

"(b) Court's instructions. At any time before or during the trial, the court may direct counsel to prepare designated instructions. Counsel shall comply with the direction, and copies of instructions so prepared shall be marked 'Court's Instruction.' Counsel may object at the conference on instructions to any instruction prepared at the court's direction, regardless of who prepared it, and the court shall rule on these objections as well as objections to other instructions. The grounds of the objections shall be particularly specified." 134 Ill. 2d R. 239(b).

It is undisputed that plaintiff's alternative instruction was filed two days after the trial had ended. However, the record reveals that plaintiff was expressly given leave of court to file his alternative instruction after trial. Therefore, we conclude that plaintiff did not waive the instruction issue by failing to tender the alternate instruction at the instruction conference.

■ Defendant next contends that plaintiff waived the instruction issue by failing to comply with Supreme Court Rule 239(c) (134 Ill. 2d R. 239(c)). Rule 239(c) provides in part:

> "All objections made at the conference and the rulings thereon shall be shown in the report of proceedings." (134 Ill. 2d R. 239(c).)

At the instruction conference, plaintiff failed to make his objection, on the record, that assumption of risk was only a damage-reducing factor. A literal reading of Rule 239(c) would require that the judgment be affirmed since plaintiff's sole issue on appeal is whether the instruction was proper.

In *Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 415 N.E.2d 337, the court held:

> "To raise an issue on appeal concerning the giving of or the failure to give an instruction, *the appellant must provide the reviewing court* with the content of the instruction conference establishing that the appellant there raised the argument that he advances on appeal or else he is barred from raising it in the reviewing court. [Citations.] This *rule does prevent a litigant from raising issues on appeal which he did not present to the trial court.* It *does not, however, afford the trial court* an opportunity to subsequently reevaluate the merits of its earlier rulings on instructions." (Emphasis added.) (*Brown*, 83 Ill. 2d at 350, 415 N.E.2d at 339-40.)

The court reasoned that the record of the instruction conference will generally not have been transcribed when the trial judge rules on the post-trial motion. (*Brown*, 83 Ill. 2d at 350-51, 415 N.E.2d at 340.) *Brown* clearly indicates that the purpose of Rule 239(c) is to allow the reviewing court to determine if the argument presented to it on appeal was first presented in the trial court.

In this case, plaintiff's contention that assumption of risk is only a damage-reducing factor is not contained in the report of proceedings of the instruction conference. Thus, plaintiff has violated Rule 239(c). However, the trial judge's comments during the post-trial motion hearing clearly reveal that a specific objection was made by plaintiff during the instruction conference:

"THE COURT: I think the greatest thrust or the greatest concern the Court has has to do with the instruction concerning the *assumption of risk which was argued at length by you on Tuesday night,* I think, before we came back here on Wednesday to have the closing arguments.

I believe that the question of the assumption of risk was properly a question for the jury to consider, and my greatest concern when we were going through the instructions and at the time the instructions were given and even at this point in time was whether in this case, if the *Duffy* case is correct, with all of the fine lines between the primary and secondary implied assumption, if that's correct, whether we had a case of primary assumption of risk or primary implied assumption of risk.

*I ultimately indicated on Tuesday night in the conference over in Belleville that I believe that the proper instruction would be that the assumption of risk was a bar* based on the belief that Brian had the opportunity once the sows or the hogs broke out of the pen to back away, which he indicated that he had backed up, looked at, and decided that he could use the push board to get out.

When we came back on Monday morning—or Wednesday morning rather and I commented on this in passing because I did indicate to you, Mr. Uhler, that I would give you the opportunity even at a later date to submit an instruction, but I did not have before me two forms of instructions. *I had indicated that I felt that the instruction the Court would give would be that the assumption of risk was a bar in this case which ultimately was done.*

*In view of the great amount of time and effort we spent on that question* and the Court's feeling at that time that the ruling was proper, I am going to stay with that ruling and I am going to deny your post-trial motion, Mr. Uhler." (Emphasis added.)

We note that the initial instruction conference was held on Tuesday, November 1, 1988, from 4 to 8 p.m. and that the court reporter was excused by the trial court before it heard arguments on the assumption-of-risk instruction. Under the circumstances of this case, we conclude that a finding of waiver would not serve the purposes of Rule 239. The trial judge's comments clearly reveal that a specific objection was presented to the trial court during the instruction conference and that plaintiff is not raising this issue for

the first time on appeal. We are not holding that Rule 239(c) should not generally be complied with, but in view of the trial court's unmistakably clear comments during the post-trial motion hearing, we conclude that the purpose of Rule 239(c) was fulfilled in this case.

■ Defendant also argues that plaintiff waived the instruction issue by failing to file an adequate post-trial motion. Defendant asserts that plaintiff was required to set forth the objected-to instruction and the alternative instruction verbatim in the post-trial motion. Plaintiff's post-trial motion provides in pertinent part:

"19. The court erred in giving the following defendant instruction: *** 5 *** concerning the defenses of assumption of risk and contributory negligence when the evidence did not support same.

20. The court erred in denying the following plaintiff's instructions *** 16 *** offered only pursuant to the court's rulings on the affirmative defenses and without waiving objections thereto, *Fox v. Beal*, 314 Ill. App. 144, *Duffy v. Midlothian Country Club*, 481 N.E.2d 1037."

Section 2—1202(b) of the Illinois Code of Civil Procedure provides in part:

"The post-trial motion must contain the points relied upon, particularly specifying the grounds in support thereof, and must state the relief desired, as for example, the entry of a judgment, the granting of a new trial or other appropriate relief." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1202(b).)

Supreme Court Rule 366(b)(2)(iii) provides:

"A party may not urge as error on review of the ruling on his post-trial motion any point, ground, or relief not specified in the motion." (134 Ill. 2d 366(b)(2)(iii).)

In *Brown*, the supreme court concluded that the post-trial motion had three purposes:

"First, it allows the decision maker who is most familiar with the events of the trial, the trial judge, to review his decisions without the pressure of an ongoing trial and to grant a new trial if, on reconsideration, he concludes that his earlier decision was incorrect. [Citations.] Second, by requiring the statement of the specific grounds urged as support for the claim of error, the rule allows a reviewing court to ascertain from the record whether the trial court has been afforded an adequate opportunity to reassess the allegedly erroneous rulings. Third, by requiring the litigants to state the specific grounds in support of their contentions, it prevents them from stating

mere general objections and subsequently raising on appeal arguments which the trial judge was never given an opportunity to consider. [Citations.] The rule, which is not limited to questions concerning jury instructions, has the salutary effect of promoting both the accuracy of decision making and the elimination of unnecessary appeals." *Brown*, 83 Ill. 2d at 349-50, 415 N.E.2d at 339.

In *Brown*, the plaintiff's post-trial motion provided: "The court refused to give plaintiff's tendered instructions 9, 11 and 16" and "the court gave over objection of the plaintiff, defendant's tendered instructions 2, 3 and 4." The *Brown* court held that such a post-trial motion was insufficient. Unlike the case before us, the post-trial motion in *Brown* gave no hint of the contents of the instructions or the objections the plaintiff was making.

In addition, the assumption-of-risk issue was a key issue in this case. Plaintiff repeatedly argued that it was not a complete bar to his recovery. He filed a motion *in limine*, a motion to strike defendant's second affirmative defense, and a motion for a directed verdict. During each hearing he argued that the assumption-of-risk defense was not a complete bar to recovery. Plaintiff made the same argument during the instruction conference and again at the hearing on the post-trial motion. Based on these facts, we conclude that plaintiff's post-trial motion sufficiently informed the trial court of his position, and, therefore, plaintiff has not waived the right to raise the instruction issue on appeal.

We now address the merits of plaintiff's appeal.

■ There are basically two forms of assumption of the risk, express and implied (Kionka, *Implied Assumption of the Risk: Does It Survive Comparative Fault?* 1982 S. Ill. U. L.J. 371), with express assumption of the risk described as follows:

"Under express assumption of risk, plaintiff and defendant explicitly agree, in advance, that defendant owes no legal duty to plaintiff and therefore, that plaintiff cannot recover for injuries caused either by risks inherent in the situation or by dangers created by defendant's negligence." *Duffy v. Midlothian Country Club* (1985), 135 Ill. App. 3d 429, 433, 481 N.E.2d 1037, 1041.

■ Implied assumption of the risk has itself been subdivided into two forms: primary and secondary. (Kionka, *Implied Assumption of the Risk: Does It Survive Comparative Fault?* 1982 S. Ill. U. L.J. 371, 376; see also Illinois Pattern Jury Instructions, Civil, Nos. 13.00 through 13.02, Comments (3d ed. 1991).) Under implied pri-

mary assumption of the risk, the risk of harm plaintiff assumes is not created by defendant, but is inherent in the activity plaintiff has agreed to undertake. (Kionka, *Implied Assumption of the Risk: Does It Survive Comparative Fault?* 1982 S. Ill. U. L.J. 371; see also Illinois Pattern Jury Instructions, Civil, Nos. 13.00 through 13.02, Comments (3d ed. 1991).) Primary implied assumption of the risk is not a true negligence defense since no cause of action for negligence is ever established. (*Duffy*, 135 Ill. App. 3d at 433, 481 N.E.2d at 1041.) Obviously, if the doctrine of implied primary assumption of the risk is applicable to the facts of the case, the plaintiff would not be entitled to recover. *Clark v. Rogers* (1985), 137 Ill. App. 3d 591, 595, 484 N.E.2d 867, 870.

In *Clark*, the plaintiff was injured when thrown by a stallion. The plaintiff alleged that one of the defendants was negligent for failing to warn her that he had used the stallion earlier in the day to tease mares. The plaintiff also claimed she could not have assumed the risk of injury because she was unaware of the defendant's actions. The court rejected plaintiff's argument and held that the defendant was not at fault, and consequently, the doctrine of primary implied assumption of the risk prevented her from recovering under her claim.

"At most, the plaintiff's evidence demonstrates the stallion was exposed to mares earlier in the day and may have become excited. The plaintiff, however, could not have assumed the stallion would be insulated from mares when her own deposition indicates there were mares in the same barn with the stallion." *Clark*, 137 Ill. App. 3d at 595, 484 N.E.2d at 870.

Under the doctrine of secondary implied assumption of the risk, the risk of harm assumed by the plaintiff is created by the defendant's negligence. (*Duffy*, 135 Ill. App. 3d at 433-34, 481 N.E.2d at 1041.) Implied secondary assumption of the risk is a fault-based concept which is functionally equivalent to contributory negligence, and like contributory negligence, it should not operate as a complete bar in negligence cases. *Wheeler v. Roselawn Memory Gardens* (1989), 188 Ill. App. 3d 193, 202, 543 N.E.2d 1328, 1334; see also *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886.

When the plaintiff alleges that the defendant is negligent with respect to a risk created by the defendant's negligence, the proper defense is contributory/comparative fault, and the instructions on implied primary assumption of the risk do not apply. (Illinois Pattern Jury Instructions, Civil, Nos. 13.00 through 13.02, Comments

(3d ed. 1991).) In fact, in such a situation no separate instructions are necessary because the Illinois Pattern Jury Instructions on contributory negligence, issues, burden of proof, damages, and forms of verdict can be adapted. Illinois Pattern Jury Instructions, Civil, Nos. 13.00 through 13.02, Comments (3d ed. 1991).

■ Defendant argues that the doctrine of implied primary assumption of the risk applies to the facts of this case. He relies heavily on the fact that plaintiff was injured by a hog, an animal which defendant alleges has dangerous propensities, and on the fact that after the boars broke out of the pens, plaintiff could have waited for help before attempting to separate the boars. The trial court also relied heavily on these factors in determining that the jury instruction given to the jury was proper.

The fact that an animal is involved does not automatically require the trial court to apply the doctrine of implied primary assumption of the risk. Defendant cites *Clark* in support of his position. However, as noted above, *Clark* held that primary assumption of the risk was applicable not because an animal was involved in the case, but because plaintiff's evidence did not indicate that the defendant was negligent. *Clark*, 137 Ill. App. 3d 591, 484 N.E.2d 867; see also *Vanderlei v. Heideman* (1980), 83 Ill. App. 3d 158, 403 N.E.2d 756.

With regard to defendant's assertion that implied primary assumption of the risk is applicable because plaintiff could have waited for help, plaintiff responds that the risk of harm, being injured by the hogs, was created by the defendant's negligence in constructing and maintaining the pens. Plaintiff argues that implied secondary assumption of the risk is applicable to these facts and therefore the fact that he did not wait for help before separating the pigs could serve only, at most, as a damage-reducing factor. Plaintiff cites *Duffy* and *Wheeler* in support of his position.

In *Duffy*, the plaintiff brought a negligence action to recover for injuries she sustained when she was hit in the eye by a golf ball. The defendant country club claimed that plaintiff was an experienced golfer and, therefore, had assumed the risk of being hit by a golf ball. Defendant argued that it created no additional risk beyond those risks inherent in the situation which plaintiff, as a spectator, had assumed, and that the doctrine of implied primary assumption of the risk was applicable to the case. The court rejected defendant's argument and affirmed the trial court's decision to instruct the jury consistent with the doctrine of implied secondary assumption of the risk.

"[P]laintiff's implied assumption of defendant's negligence will no longer operate as an absolute bar to recovery in negligence actions." *Duffy*, 135 Ill. App. 3d at 435-36, 481 N.E.2d at 1043.

In *Wheeler*, the plaintiff brought a negligence action against his landlord. The plaintiff was walking up the steps to the house he had been renting from defendants for approximately 3½ years. The plaintiff was aware that the handrails on the steps were loose and that his legs were very weak. The plaintiff was injured when he lost his balance and attempted to hold onto the handrail. The handrail rolled out beneath him, causing him to fall. The defendants argued that plaintiff assumed the risk caused by their negligence and was completely barred from recovery. In rejecting the defendant's argument, we stated:

> "Implied secondary assumption of risk is a form of fault resulting from unreasonable conduct by plaintiff. Fault resulting from unreasonable conduct looks and operates exactly like contributory negligence; it is its functional equivalent. Therefore, implied, secondary assumption of risk should operate as does contributory negligence, and probably should be so labelled. We hold, therefore, that secondary assumption of risk does not operate as a complete bar in negligence cases." *Wheeler*, 188 Ill. App. 3d at 202, 543 N.E.2d at 1334.

In the case before us, plaintiff has alleged that defendant's negligence created the risk of harm. Extensive evidence was presented at trial which tended to support plaintiff's theory. Under the facts of this case, we feel that the trial court erred in submitting to the jury the instruction set forth above. The fact that the plaintiff may have had the opportunity to wait for help before attempting to separate the boars would serve only, at most, as a damage-reducing factor. Therefore, the judgment of the circuit court of Washington County is reversed and remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

WELCH and HARRISON, JJ., concur.