# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Edwards v. Lombardi*, 2013 IL App (3d) 120518

---

| | |
|---|---|
| Appellate Court Caption | JUSTIN EDWARDS, Plaintiff-Appellant, v. JAMES LOMBARDI & COLLEEN LOMBARDI, Defendants-Appellees. |
| District & No. | Third District<br>Docket No. 3-12-0518 |
| Rule 23 Order filed<br>Motion to publish allowed<br>Opinion filed | October 3, 2013<br><br>November 20, 2013<br>November 20, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the injuries plaintiff suffered when he was attacked by a llama while cleaning a barn on defendants' farm, the entry of summary judgment on the negligence count based on the trial court's conclusion that the risk of such an attack was assumed by plaintiff was affirmed, notwithstanding the fact that defendants did not replead the defense of assumption of risk after plaintiff added the negligence count, since plaintiff waived that issue and, further, consideration of the assumption of risk defense showed that plaintiff assumed the risk of being attacked by the llama, he had experienced past incidents of aggressive behavior by the llama, and he knew the llama was in the barn when he went to clean there. |
| Decision Under Review | Appeal from the Circuit Court of Grundy County, No. 09-L-31; the Hon. Lance R. Peterson, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Scott Pyles (argued), of Rathbun, Cservenyak & Kozal, LLC, of Joliet, for appellant.

Lindsay A. Watson and Brian Hunt (argued), both of Hunt Law Group, LLC, of Chicago, for appellees.

Panel

JUSTICE McDADE delivered the judgment of the court, with opinion.

Justices Carter and Schmidt concurred in the judgment and opinion.

**OPINION**

¶ 1      Plaintiff Justin Edwards was attacked by a llama owned by defendants James and Colleen Lombardi while cleaning the Lombardis' barn. Subsequently Edwards filed a complaint against the Lombardis alleging both ordinary negligence and a violation of the Animal Control Act (510 ILCS 5/16 (West 2008)). The trial court granted summary judgment in favor of the Lombardis on both counts, concluding that Edwards assumed the risk of being attacked. Edwards appeals from the trial court's grant of summary judgment on the negligence count only. We affirm because primary assumption of the risk bars Edwards from recovering.

¶ 2                                    FACTS

¶ 3      In 2005, plaintiff Justin Edwards–then a senior in high school–began working at a pet store owned by defendants James and Colleen Lombardi. During his employment, Edwards also visited the Lombardis' family farm and helped care for their outdoor animals, which included chickens, turkeys, horses, and llamas. Edwards later left the employment of the Lombardis, but at least four separate times prior to the incident giving rise to this lawsuit Edwards helped care for the animals on the farm while the Lombardis were out of town. On each occasion, James Lombardi took Edwards around the farm and showed Edwards how to feed and water the animals, as well as clean the barn that housed the animals.

¶ 4      On these occasions, while Edwards was tending to the animals on the farm he encountered a male llama named Beau. According to Edwards' deposition testimony, on one occasion while James Lombardi was present, Beau reared up and hit Edwards, bloodying his nose and mouth. Edwards testified that Beau would always confront him as he neared the entryway to the barn, saying Beau would "pretty much charge at you a little bit." Edwards also said that when he cleaned the barn, Beau pushed him into the wall of the barn. Furthermore, Beau would spit at both Edwards and the Lombardis. Although every time

Edwards cared for the animals they were free to roam, sometimes when other people would care for the animals, Beau would be locked up in a stall. James Lombardi denied knowing of any of incidents where Beau was aggressive toward Edwards, although he did state that he had seen Beau be aggressive with other animals. Other witnesses swore in affidavits that they had never seen Beau display aggression or other dangerous propensities.

¶ 5    Edwards agreed to care for the Lombardis' animals from July 1 to July 7, 2008 while the Lombardis were out of town; in exchange, the Lombardis agreed to purchase a Chihuahua for Edwards. Edwards asked James Lombardi whether Beau would be locked up during this period, but James decided that Beau would be free to roam.

¶ 6    On the morning of July 6, 2008, Edwards arrived at the farm to clean the barn. Prior to entering the barn, Edwards noticed Beau standing in the barn's hallway along with two miniature horses. Edwards then entered the barn and began scooping up animal droppings. After about 10 to 15 minutes, Edwards noticed that Beau was approaching him. Edwards began to walk out of the barn and took one to two steps toward Beau, and then Beau reared back and backed Edwards into a corner. Edwards turned to escape by jumping over a half-wall into an adjoining stable, but as he jumped, Beau got his head under Edwards' legs and threw Edwards over the wall. Edwards crashed into the ground and immediately felt extreme pain: he could not lift his left arm and believed it was dislocated. Edwards got to his feet, and Beau spit at Edwards and continued to attempt to charge at him, though a gate now separated them. Edwards eventually made it into another stall and then to the barn's gate, using a rake to fend off Beau while he exited the barn.

¶ 7    Nadyne Axelrad-Snow is a member of the Illinois Llama Association and the International Llama Association, where she attended a number of seminars on llama handling and training. She raised Beau for seven months prior to selling him to the Lombardis. Axelrad-Snow testified that llamas can be provoked both intentionally and unintentionally. She opined that entering an enclosed space where a llama is located could be an act of provocation, depending on the llama's personality.

¶ 8    On May 20, 2009, Edwards filed a complaint against the Lombardis in the circuit court of Will County, alleging the Lombardis were liable for his injuries under the Animal Control Act (510 ILCS 5/16 (West 2008)). After the case was transferred to the circuit court of Grundy County, the Lombardis answered the complaint on September 7, 2010. The Lombardis asserted several affirmative defenses, including contributory negligence, assumption of the risk, and provocation. Thereafter, the Lombardis moved for summary judgment. On February 22, 2011, the trial court granted summary judgment in favor of the Lombardis on the issue of liability under the Animal Control Act. The court also allowed Edwards to amend his original complaint to add a count alleging that the Lombardis were negligent. The Lombardis did not file any answer or other pleading directed at the new count of negligence, but instead moved for summary judgment on the negligence issue. The court granted this motion on May 30, 2012, with an order stating "Defendant's motion is granted as to the assumption of the risk issue, and denied to the extent it is based on provocation." Edwards filed an emergency motion to clarify the court's order. In response, on June 12, 2012, the court stated that the Lombardis' motion for summary judgment was granted. Edwards then filed a timely notice of appeal.

¶ 9                                    ANALYSIS

¶ 10       Edwards has appealed the order granting summary judgment in favor of the Lombardis. First, he argues that the Lombardis could not rely on assumption of the risk as an affirmative defense because they did not plead the issue in response to the negligence count. Second, he contends that the undisputed material facts of this case do not demonstrate that Edwards assumed the risk of an attack. Finally, he argues that even if assumption of the risk applies, because the Lombardis could anticipate he would encounter Beau, the deliberate encounter exception applies to abrogate assumption of the risk.

¶ 11       Summary judgment shall be entered where the pleadings, depositions, admissions and affidavits on file, viewed in the light most favorable to the nonmoving party, reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010). "While summary judgment aids in the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and thus should be allowed only when the right of the moving party is clear and free from doubt." *Ford v. Round Barn True Value, Inc.*, 377 Ill. App. 3d 1109, 1116 (2007). An order granting summary judgment is reviewed *de novo*. *Kajima Construction Services, Inc. v. St. Paul Fire & Marine Insurance Co.*, 227 Ill. 2d 102, 106 (2007).

¶ 12       In a common-law negligence action, a plaintiff injured by an animal cannot recover unless the animal had a dangerous disposition and the owner knows of the dangerous disposition. *Vanderlei v. Heideman*, 83 Ill. App. 3d 158, 162 (1980); *Nelson v. Lewis*, 36 Ill. App. 3d 130, 133 (1976). See also *Klatz v. Pfeffer*, 333 Ill. 90, 94-95 (1928) (animal owner has duty to control animal if the animal is inherently dangerous or the animal has manifested a disposition to attack others). If the owner knows of prior attacks, then the owner assumes a duty to control the animal. See *Klatz*, 333 Ill. at 94-95.

¶ 13       Here, there are sufficient facts in the record to create a triable issue of fact on whether the Lombardis had knowledge of Beau's prior aggressive behavior. However, the trial court granted summary judgment because it concluded that Edwards assumed the risk of being attacked by Beau. Therefore, we must determine whether primary assumption of the risk applies.


¶ 14                          I. Failure to Plead Assumption of the Risk

¶ 15       As an initial matter, Edwards argues that the trial court erred in granting summary judgment based on the affirmative defense of assumption of the risk because after Edwards added his count in negligence, the Lombardis never repled their affirmative defenses in response to the new count; instead, the Lombardis immediately moved for summary judgment. Edwards points out that as an affirmative defense, assumption of the risk must be specifically pled so that the plaintiff is not taken by surprise. See 735 ILCS 5/2-613(d) (West 2010). Ordinarily, if a party fails to plead an affirmative defense, the defense is waived and cannot be considered even if the evidence suggests the existence of the defense. *Athans v. Williams*, 327 Ill. App. 3d 700, 705 (2002).

¶ 16       Even if there were error, any failure by the Lombardis to replead their affirmative

-4-

defenses is not a ground for reversal here because Edwards forfeited this argument on appeal by not presenting it below. An argument not raised by the appellant in the trial court and presented for the first time on appeal is generally considered waived. *Palen v. Daewoo Motor Co.*, 358 Ill. App. 3d 649, 658 (2005). In his reply brief, Edwards concedes he did not object at the trial level to the Lombardis' failure to replead their affirmative defenses. Because the issue was not argued below, we deem it waived. Accordingly, we will examine the arguments of parties regarding assumption of the risk.

¶ 17                                II. Primary Assumption of the Risk

¶ 18        Primary implied assumption of risk is an affirmative defense that arises where the plaintiff's conduct indicates that he "has implicitly consented to encounter an inherent and known risk, thereby excusing another from a legal duty which would otherwise exist." *Evans v. Lima Lima Flight Team, Inc.*, 373 Ill. App. 3d 407, 418 (2007). While a plaintiff assumes the risks that are inherent in the nature of the activity itself, he does not assume risks created by the defendant's negligence. *Sullivan-Coughlin v. Palos Country Club, Inc.*, 349 Ill. App. 3d 553, 560 (2004). The defense is "based on the theory that a plaintiff 'will not be heard to complain of a risk which he has encountered voluntarily, or brought upon himself with full knowledge and appreciation of the danger.' " *Vanderlei*, 83 Ill. App. 3d at 162 (quoting William L. Prosser, Torts § 79, at 523 (4th ed. 1971)). Assumption of the risk is particularly applicable when the parties are in a contractual relationship with each other. *Vanderlei*, 83 Ill. App. 3d at 162. If the doctrine applies, primary assumption of the risk operates as a complete defense to a negligence action because the defendant is said not to owe any duty to the plaintiff. *Clark v. Rogers*, 137 Ill. App. 3d 591, 594 (1985).

¶ 19        The parties cite two prior cases dealing with primary implied assumption of the risk in the context of an animal attack. In *Vanderlei*, a professional horseshoer was kicked by the defendant's stallion while placing a shoe on the horse; the horseshoer admitted that he had been kicked twice before under similar circumstances, and also admitted that it was known within his profession that horses sometimes kick while being shod. *Vanderlei*, 83 Ill. App. 3d at 163. The appellate court reversed the jury verdict in favor of the horseshoer and entered a judgment in favor of the defendant, finding that the facts demonstrated the horseshoer assumed the risk of being kicked. *Vanderlei*, 83 Ill. App. 3d at 163. In *Clark*, the plaintiff was a professional horse trainer employed to train the defendant's stallions, and she sued after she was bucked off a stallion named Jet. *Clark*, 137 Ill. App. 3d at 595. The plaintiff admitted she was told that Jet was used to tease mares for breeding purposes before she attempted to ride him. *Clark*, 137 Ill. App. 3d at 595. Also, she testified that when she attempted to mount Jet there were mares in the vicinity, and she knew stallions could be excitable around mares. *Clark*, 137 Ill. App. 3d at 595. The appellate court affirmed a grant of summary judgment for the defendant, finding that under the circumstances the plaintiff assumed the risk of any fall. *Clark*, 137 Ill. App. 3d at 595.

¶ 20        Based on the reasoning of these cases, we conclude that the facts of this case indicate that Edwards assumed the risk he would be attacked by Beau when he entered the barn. Edwards contracted to care for the Lombardis' animals knowing Beau would be free to roam. Before

he entered the barn, Edwards saw that Beau was inside and unconfined. Like the horseshoer in *Vanderlei*, who had been kicked on prior similar occasions, Edwards knew that Beau had been aggressive toward him in the past: Edwards testified that Beau would always charge when he neared the barn, and Beau had pushed him into a wall and hit him in the face in the past. Despite these experiences, Edwards chose to enter the barn knowing Beau was inside. Therefore, he assumed the risk that Beau would attack him in a manner similar to those past instances.

¶ 21    We reject Edwards' attempts to distinguish *Vanderlei* and *Clark* on the basis that those cases involved professionals who therefore understood the risks inherent in their field; here, Edwards knew the risk Beau posed to him because of his past experience with Beau's aggression. We also reject the argument that Edwards could not assume the risk here because it was the Lombardis who were negligent for failing to confine Beau. Edwards knew Beau would be free to roam but agreed to care for the animals anyway. Furthermore, it was not the decision to leave Beau unconfined that led to the attack, but rather it was Edwards' decision to enter a confined space with an animal that had previously been aggressive toward him. Therefore, it was proper for the trial court to enter summary judgment on the basis that Edwards assumed the risk of being attacked by Beau.

¶ 22                       III. Deliberate Encounter Exception

¶ 23    Edwards argues that even if he is said to have assumed the risk, the deliberate encounter exception applies because the Lombardis would have expected him to encounter Beau while he was working on the farm. Under the deliberate encounter exception, a landowner is liable for injuries to a business invitee resulting from an open and obvious danger if the landowner has reason to expect a person would choose to encounter the apparent danger. *LaFever v. Kemlite Co.*,185 Ill. 2d 380, 390-91 (1998). The exception is often applied in cases involving economic compulsion, such as where workers are compelled to encounter dangerous conditions as part of their employment. *Morrissey v. Arlington Park Racecourse, LLC*, 404 Ill. App. 3d 711, 725-26 (2010).

¶ 24    We note that it is unclear whether the deliberate encounter exception would apply to excuse Edwards' assumption of the risk. The doctrine normally applies in the context of open and obvious dangers on land (*LaFever*, 185 Ill. 2d at 390-91), although the appellate court in *Morrissey* indicated that even when primary assumption of the risk applies, the deliberate encounter exception may still allow a plaintiff to recover (*Morrissey*, 404 Ill. App. 3d at 732 (finding insufficient support to conclude that primary assumption of the risk necessarily abrogates the deliberate encounter exception)).

¶ 25    We need not decide whether the deliberate encounter exception applies here, however, because once again Edwards has waived the argument on appeal by failing to raise it below. See *Palen*, 358 Ill. App. 3d at 658 (argument not raised by the appellant at trial is considered waived on appeal). Edwards asserts that he did in fact raise this argument at the trial court; however, he fails to cite to any relevant pages of the record where he raised this argument. We have also independently reviewed the common-law record and report of proceedings, and there is no indication from any of the pleadings, briefs, or motions that Edwards ever argued

to the trial court that the deliberate encounter exception applied here. Therefore, given the record before us, we conclude that Edwards did not raise this argument below and therefore the issue is waived.

¶ 26　　　Accordingly, because the undisputed material facts demonstrate that Edwards assumed the risk of being attacked by Beau, the trial court properly granted summary judgment in favor of the Lombardis.

¶ 27　　　　　　　　　　　　　　　CONCLUSION

¶ 28　　　For the foregoing reasons, the judgment of the circuit court of Grundy County is affirmed.

¶ 29　　　Affirmed.