THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANDREW P. BOWEN, Defendant-Appellant..

Fourth District   No. 4—96—0275

Opinion filed June 30, 1997.

Daniel D. Yuhas and Arden J. Lang, both of State Appellate Defender's Office, for appellant.

Norbert J. Goetten, Robert J. Biderman and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, for the People.

JUSTICE GARMAN delivered the opinion of the court:

Defendant Andrew P. Bowen was charged in the circuit court of Adams County with one count of aggravated criminal sexual assault (720 ILCS 5/12—14(b)(1) (West 1994)). He was accused of placing his penis in the mouth of then three-year-old D.M.P. while he was baby-sitting her sometime during the month of May 1992. Following a bench trial, defendant was convicted and subsequently sentenced to

nine years' imprisonment. He now appeals, arguing (1) he was not proved guilty beyond a reasonable doubt, (2) the trial court erred in admitting into evidence D.M.P.'s videotaped interview with police despite the fact she testified at trial, and (3) he is entitled to $5-per-day credit against his fine for time spent in jail awaiting sentencing.

A hearing was held pursuant to section 115—10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115—10 (West 1994)), during which three persons to whom D.M.P. had made statements testified. One of those, Robert Copley, a police officer for the City of Quincy, conducted a videotaped interview with D.M.P. The State sought to introduce the videotape recording through Copley's testimony. Defense counsel objected on the basis that a child could not possibly remember what happened to her when she was three years old. The trial court granted the State's request, finding that the minor was unavailable because of limitations demonstrated during an *in camera* examination. The court also found that the time, content, and circumstances of the videotaped statement provided sufficient safeguards of reliability. The court noted the minor's statements were corroborated by other evidence, including volunteered statements and crying hysterically when she believed defendant was going to be baby-sitting for her after the alleged incident occurred.

At the February 1996 trial, D.M.P. testified that she is seven years of age and currently resides in a foster home. She knew a person named Andy who baby-sat for her at Vonnie Tucker's house before she was in kindergarten. She does not recall what Andy looked like. He made her "suck his private part." He told her not to tell her mother. Her brother, Donny, and Derrick, Tucker's son, were there. She and Andy were in the front room of the house, and Derrick and Donny were in Derrick's room. Andy also put his private part in her private part. She does not recall whether Andy baby-sat for her after that incident. She remembers talking to Terri Allen about what happened and she told her the truth. She does not remember talking to police officer Rob Copley. She did not tell Donny about the incident.

On cross-examination, D.M.P. testified that she recalls telling Allen that no one put anything in her "butt." The incident did not happen in a bathroom or in any room where there was a shower. She did talk to Copley about the incident. She also talked to "Cathy" about it.

Laura Richmiller, family support worker for Bridgeway Family Services (Bridgeway), testified that Bridgeway does contract work for the Illinois Department of Children and Family Services (DCFS). She transports D.M.P. and Donny to counseling appointments and supervises their visits. On March 29, 1995, she was taking Donny to a

counseling appointment and, afterward, he and D.M.P. were to visit their mother. They were driving to the visit and the children were arguing in the car. Donny said, "So, [D.M.P.], you licked Andy Bow's lizard." D.M.P. said, "So. He made me do it." Richmiller reported this conversation the following day.

On cross-examination, Richmiller stated that Donny was eight years of age at the time of this conversation and D.M.P. was six.

Mary, D.M.P.'s mother, testified that Donny and D.M.P. have been in foster care since January 27, 1995. They lived with her prior to that time. Mary identified defendant as Andy Bowen. Her children called him "Andy Bow." Defendant baby-sat for her children on three occasions during the time she attended parenting classes, in either May or June 1992. He baby-sat twice at Tucker's house and once at another person's house. She stopped having defendant baby-sit because D.M.P. threw a "fit" one night when she asked him to baby-sit. D.M.P was crying and hysterical, but stopped when she realized the baby-sitting arrangements did not work out and defendant was not going to baby-sit that night. Mary decided not to ask defendant to baby-sit anymore because of D.M.P.'s reaction. Approximately one month later, D.M.P. told Mary while they were at a house in Warsaw that "Andy Bow made her kiss his pee pee." D.M.P. started crying and did not say any more. Mary did not report the incident.

Mary testified that she talked to Copley and told him these incidents would have happened when D.M.P. was three years old. She denied telling Copley that D.M.P. made the statement only one week after the incident. At a prior hearing, she testified the incident could have happened as late as July 1992.

Copley testified that on March 31, 1995, he interviewed D.M.P. Terri Allen, investigator for DCFS, was also present. He first interviewed her at the foster home and then again at the police station, where her interview was videotaped. The State's Attorney offered into evidence a videotape of the interview and asked that it be played for the court. The court admitted the videotape into evidence over defense counsel's objection for the same reasons the court had given at the section 115—10 hearing. Counsel also argued the videotape was cumulative to D.M.P.'s trial testimony and that he did not have an opportunity to cross-examine her at the time of her statement. The court also noted that the fact D.M.P. had testified at trial was not a bar to the admission of the tape. The tape was then played but not transcribed by the court reporter.

On further direct examination, Copley testified the only major difference between what D.M.P. told him at the foster home and during the videotape interview was that at the foster home she said

something came out of defendant's "area." She said she did not know what color it was except that it was not the color of her hair (which is blond). In the videotape, she said nothing came out. Copley put together a photographic array that included defendant's picture and showed it to D.M.P.'s mother. She picked the photo of defendant and said he was the person who had baby-sat for her children. Copley located defendant, read him his *Miranda* rights, and interviewed him on April 11, 1995. Defendant said he baby-sat for D.M.P. and Donny and that he had not seen them for about three years. He admitted baby-sitting at Tucker's house. At first, defendant denied touching any of the children in a sexual manner. When told it was alleged he had put his penis in D.M.P.'s mouth and in her vagina or "butt," defendant said he could not remember this happening. When asked if he could honestly say he had never put his penis in D.M.P.'s mouth, defendant said he could not honestly say that. Defendant was present at the police station on April 22, 1995, for a second interview. He was again read his *Miranda* rights. That interview was tape-recorded and the tape admitted into evidence and played for the court, but not transcribed. However, the tape is part of the record on appeal. In the taped interview, defendant said he baby-sat for D.M.P. and Donny at Tucker's house. It could have been in May 1992. On one occasion, defendant got out of the shower and D.M.P. grabbed his erect penis and put it in her mouth. On another occasion, D.M.P. slid up and down on his lap. At that time, his penis was erect. Defendant said he stopped D.M.P. because he knew it was wrong. He did not ejaculate either time.

On cross-examination, Copley testified that, in the first interview at the foster home, D.M.P. said that no one had put anything in her "butt." Later in that interview, she stated that defendant had put his penis in it. At the first interview, D.M.P. could not recall whose house she was at when the incident happened. In the taped interview, she could not recall where the incident occurred until Copley asked her who "Aunt Vonnie" was and, then, D.M.P. stated she was at Tucker's house when it happened. Copley said D.M.P. told him that her mother was working at the time. He showed D.M.P. the photographic array, and she could not pick out defendant's picture. She did not mention that the baby-sitter had a scar on his lip and talks funny; Copley is aware these are characteristics of defendant. Mary told Copley that defendant baby-sat two Tuesday nights in a row and, on the third Tuesday night, D.M.P. "threw a fit." Mary also said that one week later D.M.P. told her defendant had shown her his "pee pee." Copley acknowledged that at no time during either interview did D.M.P. mention that defendant told her not to tell her

mother what happened. It is his understanding that D.M.P. told her brother about the incident, based upon the conversation in Richmiller's car.

On redirect examination, Copley testified that D.M.P. initially did not remember some things but, as the interview progressed, she began to remember and changed her story.

Theresa Sprinkle testified for defendant that during May 1992 she worked at the same place as Tucker. They were both bartenders. She worked every Tuesday and Thursday from 5 p.m. to 1 a.m. Tucker did not work Tuesdays and Thursdays.

Tucker testified that during May 1992 she worked the day shift on Monday, Tuesday, Thursday, and Saturday. She finished work each day at 5 p.m. Defendant baby-sat for her at times, but never on Tuesday or Thursday evenings. She played darts on Wednesday evening and that is when he would baby-sit. After she was married in March 1992, defendant did not baby-sit for her children or Mary's children in her home.

On cross-examination, Tucker said that the last time defendant would have baby-sat at her house was in January 1992. She insisted she was home each Tuesday evening in May 1992. She then admitted she does not remember exactly what she did on any given night during that month, but she was not working. She admitted she sometimes went out on nights other than Wednesday and had a babysitter on those nights. If defendant baby-sat, he did it at his home after she was married.

After the conclusion of all the evidence, the trial court found defendant guilty of the charged offense. Following denial of defendant's post-trial motion and a sentencing hearing, the court sentenced defendant to nine years' imprisonment and imposed a sexual assault fine of $100 and restitution of $1,144.97. Defendant was granted 57 days' credit against his sentence for time spent in jail awaiting sentence. Finally, the court certified defendant as a child sex offender.

■ Defendant first argues on appeal that the proof was insufficient to convict him. A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276 (1985). When presented with a challenge to the sufficiency of the evidence, a reviewing court will sustain a criminal conviction if " 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Collins*, 106 Ill. 2d at 261, 478 N.E.2d

at 277, quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979).

Defendant notes that D.M.P. was only three years of age at the time of the alleged incident and could not accurately remember when or where it occurred. He notes the discrepancies in her interviews with police and the differences between what she said in the interviews and in her trial testimony. At first, for instance, she could not remember where the incident had occurred, then later stated it took place in the front room of Tucker's house. She also said she did not tell her brother about the incident, but defendant points to the conversation in Richmiller's car as evidence that he knew of it. She said at trial that defendant told her not to tell her mother. However, she said nothing about this in her interviews. In addition, D.M.P. could not identify defendant as the man who had molested her. Defendant also points to the differences between D.M.P.'s version of the offense and his own statements. Defendant further argues the evidence does not establish that he baby-sat for D.M.P. in May 1992. He points to the testimony of Tucker and Sprinkle that he believes refutes the State's claim that the offense was committed sometime in May 1992.

■ The credibility of the witnesses and the weight to be given their testimony are matters within the exclusive province of the trier of fact. A reviewing court may not substitute its judgment for that of the jury or trial court in such matters. *People v. Manion*, 67 Ill. 2d 564, 578, 367 N.E.2d 1313, 1320 (1977); *People v. Ellis*, 74 Ill. 2d 489, 496, 384 N.E.2d 331, 334 (1978). Defendant essentially asks us to reweigh the evidence and determine the credibility of the witnesses. However, this is not our province as a reviewing court. We do not find the discrepancies between D.M.P.'s testimony and the statements in her police interviews to be so great as to discredit her testimony as a matter of law. Any discrepancies affected only the weight to be given her testimony by the trial court; they did not destroy her credibility. Contrary to defendant's assertion, the testimony of Tucker and Sprinkle did not establish as a matter of law that the offense could not have taken place in May 1992. The evidence was conflicting, and the trial court was required to weigh the evidence and determine the credibility of the witnesses. These were matters for the trial court to resolve. In addition, defendant made a statement in which he stated that he could not remember placing his penis in D.M.P.'s vagina or "butt," but admitted he could not "honestly say" that he never inserted his penis in D.M.P.'s mouth. He then stated that his penis had been in her mouth but only because she placed it there. The trial court, as trier of fact, was free to accept

defendant's statement that his penis was in D.M.P.'s mouth but reject his story as to how it got there. We further note that defendant himself stated the incident could have happened in May 1992. Based upon the record, we cannot conclude that no reasonable trier of fact could have found defendant guilty beyond a reasonable doubt.

■■ Defendant next argues that the trial court committed reversible error when it admitted into evidence the videotaped interview of D.M.P. by Copley after D.M.P. had already testified. He argues that section 115—10 of the Code does not allow for the admission of such evidence. Section 115—10 of the Code provides in pertinent part:

"Certain hearsay exceptions.

(a) In a prosecution for a physical or sexual act perpetrated upon or against a child under the age of 13, or a person who was an institutionalized severely or profoundly mentally retarded person as defined in Section 2—10.1 of the Criminal Code of 1961 at the time the act was committed, including but not limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961 ***, the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by such child or institutionalized severely or profoundly mentally retarded person, of an out of court statement made by such child or institutionalized severely or profoundly mentally retarded person, that he or she complained of such act to another; and

(2) testimony of an out of court statement made by such child or institutionalized severely or profoundly mentally retarded person, describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual or physical act perpetrated upon or against a child or institutionalized severely or profoundly mentally retarded person.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child or institutionalized severely or profoundly mentally retarded person either:

(A) testifies at the proceeding; or

(B) is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement." 725 ILCS 5/115—10(a), (b) (West 1994).

The State argues that defendant has waived this argument, not-

ing that at the section 115—10 hearing, defense counsel objected to the admission of the videotape only on the basis that a child could not possibly remember what happened when she was three years of age. At trial, counsel objected to the videotape on the basis that the evidence was cumulative to D.M.P.'s trial testimony and he did not have the opportunity to cross-examine her when her statement was given. He made no objection on the basis that section 115—10 of the Code does not permit the introduction into evidence of a videotaped interview of a child. A specific objection waives all grounds not asserted. *People v. Williams*, 97 Ill. 2d 252, 288, 454 N.E.2d 220, 237 (1983). Further, defendant did not include any claim of error in regard to the videotape in his posttrial motion. Failure to raise an issue in a posttrial motion results in waiver of that issue on appeal. *People v. Berry*, 99 Ill. 2d 499, 503, 460 N.E.2d 742, 744 (1984); *People v. Pruden*, 110 Ill. App. 3d 250, 256, 442 N.E.2d 284, 289 (1982). Despite waiver, however, we will address the merits of defendant's argument.

■ The issue of admission at trial of videotaped testimony of a child complainant pursuant to section 115—10 of the Code has not previously been addressed by this court. However, we have had occasion to consider the admission of an audiotape of a statement of a child complainant. In *People v. Peck*, 285 Ill. App. 3d 14, 674 N.E.2d 440 (1996), defendant was convicted of aggravated criminal sexual assault of his two young daughters. The trial court conducted a section 115—10 hearing, at which it determined that hearsay statements by the girls and an audiotape of a statement by one of the girls were admissible. All the statements, including the audiotape, were admitted at defendant's jury trial. On appeal, defendant challenged admission of the statements. This court held the hearsay statements were erroneously admitted. As to the audiotape, the court found some statements on the tape were improper hearsay and that the tape should not have been admitted for this reason. However, in considering issues in the case that would likely arise on remand, we expressed the opinion that the audiotape of the statement could be admitted at trial pursuant to section 115—10 of the Code, provided it is otherwise admissible under that section and a proper foundation is laid for its admission. In construing section 115—10 of the Code to allow use of audiotapes of statements, we noted that while a court must give effect to the plain meaning of a statute, it must also consider the reason and necessity for the law, as well as the objective the legislature sought to accomplish. We concluded that the reasonable meaning of the statute, as well as the goals sought to be accomplished in facilitating prosecutions for child sexual abuse, indicated that an audiotape

of a statement could be used if properly admitted pursuant to section 115—10 of the Code. We noted that allowing jurors to hear an audiotape of a statement was essentially the same as allowing a third person to testify verbatim regarding statements made by the child. We also commented that an audiotape possesses more probative value than the testimony of a third person because the jury can hear the child's tone of voice and pauses or hesitation. We acknowledged that the Second District Appellate Court in *People v. Mitchell*, 225 Ill. App. 3d 708, 717, 588 N.E.2d 1247, 1253 (1992), held that a videotaped statement of a child victim was inadmissible at trial under section 115—10 of the Code. However, we noted this decision was not binding upon us and we declined to follow it. *Peck*, 285 Ill. App. 3d at 20, 674 N.E.2d at 444-45.

Defendant urges us to reexamine *Peck* and hold that a videotaped statement of a child complainant is not admissible at trial under section 115—10 of the Code. He argues the videotape lacks any procedural safeguards, such as contemporaneous cross-examination. He notes it is unrealistic to expect his counsel to be able to cross-examine the child about a statement that was given several months prior to trial. He points out that statements given by D.M.P. on the videotape were not sworn testimony and complains that Copley asked leading questions. He also argues the videotaped testimony allowed the State to present its evidence twice.

Defendant relies upon *People v. Bastien*, 129 Ill. 2d 64, 80, 541 N.E.2d 670, 677 (1989), in which our supreme court held unconstitutional section 106A—2 of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 106A—2), which authorized admission at trial of a child's videotaped testimony in a sexual abuse case, provided the child was available at trial for cross-examination. The statute did not allow for contemporaneous cross-examination of the child by the defendant. The court held this procedure deprived defendant of his constitutional right to confrontation.

Defendant here notes that we distinguished the *Bastien* case in *Peck* by pointing out that there was no procedure in that case for determining that the circumstances of the child victim's videotaped testimony contained sufficient safeguards of reliability. He insists this was not a major factor in *Bastien*, noting that the supreme court found little justification to rely upon the weaker version of the child's testimony when the child must testify again at trial. The statute at issue in *Bastien* granted discretion to the trial court in admitting the videotaped testimony, but set no standards for the exercise of that discretion. In contrast, section 115—10 of the Code contains specific requirements to be met to ensure the child victim's statement is reli-

able. The videotaped statement in the instant case was not testimony in the same sense as was the testimony of the child victim in *Bastien.* There, attorneys were present, as well as the court and the defendant. The videotaping took place in a true courtroom setting. Although the defendant's attorney was not permitted to ask questions, the defendant was required to be present at the videotaping. Yet, the child would be required to go through the same procedure again at trial, except that he or she would then be subject to cross-examination. This procedure was truly redundant and, as the supreme court noted, served no real purpose when the child was required to testify at the trial. In the instant case, D.M.P. was not questioned on videotape by the prosecutor; she was interviewed by a police officer. Under the provisions of section 115—10 of the Code, that same police officer could have testified verbatim at trial as to statements made by D.M.P. in the interview. We see no reasoned distinction between a videotape of a child's statements and a third person testifying verbatim to those same statements. The latter procedure is expressly permitted under section 115—10 of the Code. As we indicated concerning the audiotape in *Peck,* a videotape would be more useful in assisting the fact finder in determining whether the child was being truthful, rather than simply hearing someone else testify as to what the child said. We therefore conclude the videotape procedure used here was permissible under section 115—10 of the Code.

■ Defendant's final argument is that he is entitled to a credit against his fine of $5 per day for each day of incarceration prior to his commitment to the Department of Corrections. He acknowledges that he did not request the credit at the time of sentencing. In *People v. Toolate,* 274 Ill. App. 3d 408, 654 N.E.2d 605 (1995), defendant sought the credit but had not requested it at sentencing. This court noted the statute granting the credit (725 ILCS 5/110—14 (West 1992)) was amended in 1994 to eliminate the requirement that the circuit clerk notify a defendant in writing of his right to request the credit. Pub. Act 88—287, eff. January 1, 1994 (1995 Ill. Laws 2472, 2474), amending 725 ILCS 5/110—14 (West 1992). Thus, the court reasoned, the normal rules of waiver apply and it was held that the defendant had waived the issue for appeal.

However, our supreme court has very recently abrogated *Toolate* and held that a defendant may apply for the credit on appeal as well as in the trial court. *People v. Woodard,* 175 Ill. 2d 435, 457-58, 677 N.E.2d 935, 946 (1997). Thus, defendant is entitled to the credit.

We, therefore, affirm defendant's conviction and sentence and remand to the trial court for the purpose of amending the order of

judgment and sentence to reflect the proper amount of credit against defendant's fine.

Affirmed and remanded.

McCULLOUGH and KNECHT, JJ., concur.