No. 2--06--0226          Filed:  3-30-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| STEVE TOWNSEND and KRISTI TOWNSEND, | ) ) | Appeal from the Circuit Court of Lake County. |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | No. 01--L--95 |
| | ) | |
| JAMES FASSBINDER, Individually, and FASSBINDER UNITED BUILDERS, INC., | ) ) | |
| | ) | |
| Defendants-Appellants | ) | |
| | ) | |
| (Rainbow Painting Services, Inc., Robert Wlodarski, Individually and d/b/a Romar Insurance Service, and Romar Insurance Service, Defendants; United States Liability Insurance Company, Intervenor). | ) ) ) ) ) ) | Honorable Patrick N. Lawler, Judge, Presiding. |

JUSTICE BYRNE delivered the opinion of the court:

Plaintiffs, Steve Townsend and his wife, Kristi Townsend, brought this common-law negligence and premises liability action against defendants, James Fassbinder (Jim), individually, Fassbinder United Builders, Inc. (United), Rainbow Painting Services, Inc. (Rainbow), Robert Wlodarski, individually and d/b/a Romar Insurance Service, and Romar Insurance Service, for injuries Steve sustained when he fell through an unguarded and unbarricaded hole in the floor while he was working at Jim's house, which was under construction.

Plaintiffs alleged that a workers' compensation claim was pending against United and that United had denied that Steve was its employee. They further alleged that Steve was the agent of either Rainbow or United. Jim and United (collectively, defendants) sought summary judgment. Jim denied that Steve was his employee and alleged that Steve proximately caused his own injuries by failing to protect or cover the opening, by encountering the known danger of the opening, and by knowingly entering and working in the area that he knew contained the opening. United claimed that Steve was its immediate employee, not an employee of Rainbow, that he was barred from suing United because of the exclusive remedy provision of the Workers' Compensation Act (Act) (820 ILCS 305/5(a) (West 2000)) for receiving workers' compensation benefits, and that he was judicially estopped from denying that United was his immediate employer, because of an affidavit presented to the Industrial Commission, stating that, on the day of the accident, he was not working for Rainbow. Rainbow also sought summary judgment, asserting that it had no presence at the work site and alternatively that its alleged presence there was as Steve's employer.

The trial court denied defendants' motion for summary judgment, finding that there was a question of fact in terms of whether there was an employer-employee relationship, such that Steve's receipt of workers' compensation benefits was not a bar to plaintiffs' common-law suit, and finding that the affidavit was not a binding admission. The court noted that there could be a remedy for United for the benefits paid, "whether it be a recovery of payments from an award with a special interrogatory to the jury in terms of whether there is an employer/employee relationship."

The case proceeded to a jury trial only against defendants, the additional named defendants having previously been dismissed. Also dismissed was intervenor, United States Liability Insurance Company (USLIC), United's workers' compensation insurance carrier. Rainbow ultimately settled and was dismissed with prejudice. Following the denial of a directed verdict, the jury found

defendants negligent and the court entered judgment on the verdict, awarding Steve $1,951,238, after applying a finding of 10% contributory negligence, and Kristi $250,000 for loss of consortium. The trial court denied defendants' motions for judgment notwithstanding the verdict (judgment n.o.v.) and, in the alternative, for a new trial. However, it reduced Kristi's award by $25,000 based on the 10% fault of Steve and further reduced Steve's award by $50,000 as a setoff for the amount paid by Rainbow to Steve.

Defendants appeal the judgment, contending that the trial court erred by (1) denying the motion for a directed verdict or judgment n.o.v. that the exclusive remedy provision of the Act barred Steve from bringing his common-law claim; (2) denying the motion for a directed verdict or judgment n.o.v. that Steve was judicially estopped from arguing that he was employed by Rainbow; (3) refusing to tender jury instructions for workers' compensation and primary assumption of risk; and (4) allowing the testimony of (a) Ken Yotz, plaintiffs' safety expert, that Steve worked for Rainbow; (b) John Adams, defendants' workers' compensation attorney, that Steve was not an employee of United; and (c) plaintiffs that United's workers' compensation coverage was suspended by USLIC because of Jim's misrepresentations. We affirm.

FACTS

On the day of the accident, February 2, 1999, Steve was a 47-year-old painter who reported for work at Rainbow, where he had worked for the past five years, at approximately 40 hours a week. Each day he reported to the Rainbow shop, where Mike Fassbinder, Rainbow's owner, told the painters where they would be working that day. The painters would then put the Rainbow equipment in the Rainbow truck and drive to the work site. Work sites consisted of various places but were usually homes. Kristi, who previously had worked for Rainbow herself, verified that Steve had worked exclusively for Rainbow for the past five years.

As a "lead man," Steve was responsible for the equipment, for the truck, and for coordinating two to eight painters at the jobsite, depending on the size of the project. Mike entrusted Steve with a gas card to fill the Rainbow truck when the vehicle was low on gas.

On February 2, when Steve arrived at Rainbow, Mike ordered Steve and a crew of painters to go to a house under construction at 32108 Turnberry in McHenry, Illinois, belonging to Jim, Mike's brother, to paint the drywall. Mike never told Steve that he was being employed that day by Jim. Steve organized the crew, loaded the Rainbow equipment into the Rainbow truck, and drove to the site.

Jim owned United. United was the general contractor for the home at 32108 Turnberry. At trial, Jim admitted that United was not the painting contractor for the job, even though he had represented on a sworn permit application and on sworn contractor statements that United was the painting contractor.

Upon his arrival at Jim's house, Steve met with Jim and noticed an uncovered and unbarricaded hole in the floor. The opening was to be used for the stairway to the basement, which had not been installed at that time, and measured about four-by-eight feet. The hole had been barricaded previously to protect the workers at the site from the dangerous condition it created when the workers became distracted by work. Two days earlier, Jim had removed the barricade. Although Jim testified that he knew that an uncovered hole was a dangerous and hazardous condition, he did not replace the barricade or cover the hole before Steve arrived at the house.

Steve was the only painter working in the room with the hole. Steve believed that the general contractor was responsible for insuring that that type of hole was covered. Jim told Steve that he would take care of covering or barricading the hole. With that understanding, Steve went to a

different area and started sweeping the walls to remove drywall dust. That is the last memory Steve had before waking up in the hospital.

Eric Fassbinder, Jim's 26-year-old son, was working for his father, doing rough framing and general labor at the house. While Eric was in the basement working on February 2, he heard a thump and went to investigate the noise. He found Steve lying on the concrete floor with blood coming out of his ears, nose, and mouth, and the back of his head. Steve had fallen approximately 15 feet through the hole, cracking his head on the concrete. Eric yelled for help. Jim called 911 and the paramedic crew transported Steve to the hospital. Steve sustained significant injuries and currently has an overall IQ of 75, an impaired ability to make decisions, and borderline mental capacity.

Jim testified that, before the day of the accident, he called Mike and asked to borrow his painters. Jim claimed that he did not file W-2 forms for the painters because they were "casual laborers" who did not earn enough money to trigger the filing requirements. Jim did not recall telling Kristi that he would take care of Steve's medical bills. However, after the accident, USLIC voluntarily paid Steve's medical bills and interim wages. Those benefits were discontinued because USLIC believed Jim had made misrepresentations on his insurance policy. Nevertheless, Jim testified at trial that the Rainbow painters were employed by United on the day of the accident.

Jim never spoke with Steve at any time prior to February 2. When Steve arrived at the house, Jim never told him that he would be working for United that day. Jim did not supply Steve or any of the other Rainbow painters with equipment or directions on how to perform the job.

When Mike called Kristi to inform her of Steve's accident, he told her that Jim was going to pay the medical bills, a fact that Jim verified when Kristi saw him at the hospital that morning. Jim never told Kristi or gave her the impression that Steve was his employee that day. When the hospital talked to Kristi about who was going to pay Steve's bills, she said that Steve was working

for Rainbow, but that United would be paying the bills, because that is what Jim told her to say. The hospital records admitted into evidence disclose that the hospital was told that Steve's employer was Rainbow and that the medical bills were guaranteed by United.

Steve was not a W-2 employee of United and was not paid by United for any work he performed on February 2. In the "Dome" books kept by United in the regular course of business, there is no showing that any of the Rainbow painters were paid as United employees. They were paid under the category of "subs w/o certs," subcontractors who did not have insurance certificates. Steve's paycheck for the week in which he was injured was issued by Rainbow.

Over defendants' continuing objection, Ken Yotz, plaintiffs' expert safety and health consultant, testified. He audits workplaces to identify hazards that may be in violation of OSHA requirements, general industry custom and practice, or other guidelines or written standards. In explaining how the OSHA policy statements apply to general contractors, Yotz explained that at a typical construction site, where there are multiple employers present, OSHA has what it calls a multi-employer work-site policy in which various parties share safety responsibilities.

Yotz rendered several opinions. Yotz first noted that the person or entity that served as Steve's employer was a matter that was in dispute. He then opined that, regardless of who was determined to be Steve's employer, United created the hazard to which Steve was exposed on February 2, 1999, because it controlled the work and had a duty to provide a safe workplace and to take corrective action to remedy the hazard. This conclusion was based on deposition testimony as well as the OSHA multi-employer work-site policy and industry custom and practice regarding general contractors. Yotz next opined that frequent and regular inspections of the work site were not made by a competent person using OSHA standards and that defendants failed to properly guard, protect, or cover the opening.

Finally, Yotz opined that, although the jury must ultimately decide the issue, there was sufficient information demonstrating that Steve was not working for United on the day he was injured. Yotz based this opinion on his knowledge of the way in which construction sites are run; the fact that United is a general contractor that had other trades working at the site; the fact that the only United employee on the site, other than Jim, was Eric; and the fact that Rainbow directed Steve to the work site and provided the truck, tools, materials, and other painters. Yotz also considered Steve's testimony at trial that he was employed by Rainbow on the day of the accident and the hospital report stating that Rainbow was Steve's employer and that United paid the hospital bills. Yotz further considered that Steve was not a W-2 employee of United and that, for the week ending on February 2, Rainbow had paid Steve for the time he had worked. Finally, Yotz observed that Jim admitted at one point that Steve was not his employee.

WORKERS' COMPENSATION CLAIMS AGAINST RAINBOW AND UNITED

Three months after the accident, and before plaintiffs filed the present action on February 1, 2001, Steve filed claims for workers' compensation benefits against both Rainbow and United. After the accident, USLIC voluntarily paid Steve's medical bills and interim wages. The workers' compensation insurance application completed on behalf of United stated that United did not use subcontractors.

USLIC terminated Steve's interim workers' compensation benefits on May 2, 2000, and at the time of trial, they had not been reinstated. As noted, plaintiffs alleged in their complaint at law that in the workers' compensation claim pending against United, United had denied that Steve was its employee. On May 16, 2000, Steve, not knowing that his benefits had been terminated, signed an unnotarized affidavit, which stated that, although he was regularly employed by Rainbow, he was not working for Rainbow on February 2, 1999, at the time of the accident. The affidavit did not

involve United.  This affidavit was used to support an agreed motion to dismiss with prejudice Steve's workers' compensation claim against Rainbow, on May 23, 2000.

Both plaintiffs testified at trial that Steve was told by their workers' compensation attorney and Rainbow's attorney to sign that affidavit or there would be a dispute about who was Steve's employer and his benefits would be terminated.  Plaintiffs testified that Steve had since filed an action against Rainbow for fraud and that that case was still pending with the Industrial Commission.

Jim never testified before the Industrial Commission that Steve was United's employee.  However, in correspondence dated February 28, 2003, regarding Steve's workers' compensation claim against United, John Adams, USLIC's attorney told Steve's attorney that United denied that it was Steve's employer, based on Steve's testimony before the Commission.  Following the denial of defendants' motion in limine, the trial court allowed Adams to testify at trial regarding the statement in his correspondence.

ANALYSIS

1. Directed Verdict or Judgment N.O.V.

Defendants contend that the trial court erred by failing to grant them a directed verdict or a judgment n.o.v.  A motion for a directed verdict is reviewed in the same manner as a motion for a judgment n.o.v.  Evans v. Shannon, 201 Ill. 2d 424, 427 (2002).  The motion should be granted where all of the evidence, when viewed most favorably to the opposing party, so overwhelmingly favors the moving party that no contrary verdict based on the evidence could ever stand.  Evans, 201 Ill. 2d at 428.  In other words, it presents "a question of law as to whether, when all of the evidence is considered, together with all reasonable inferences from it in its aspect most favorable to the plaintiffs, there is a total failure or lack of evidence to prove any necessary element of the [plaintiffs']

case." Merlo v. Public Service Co. of Northern Illinois, 381 Ill. 300, 311 (1942). Because the standard for entry of a directed verdict or a judgment n.o.v. "is a high one" (Razor v. Hyundai Motor America, 222 Ill. 2d 75, 106 (2006)), such a judgment is inappropriate if "reasonable minds might differ as to inferences or conclusions to be drawn from the facts presented" (Pasquale v. Speed Products Engineering, 166 Ill. 2d 337, 351 (1995)). The reviewing court reviews de novo the trial court's decision on a motion for a directed verdict or a judgment n.o.v. York v. Rush-Presbyterian-St. Luke's Medical Center, 222 Ill. 2d 147, 178 (2006); Evans, 201 Ill. 2d at 427.

Specifically, defendants contend that because Steve collected some workers' compensation benefits from United, defendants may invoke the exclusive remedy provision of the Act (820 ILCS 305/5(a) (West 2000)). Defendants also contend that Steve was judicially estopped from arguing at trial that he was employed by Rainbow on the day of the accident, because of the signed affidavit that he presented in his workers' compensation claim against United, stating that he was not working for Rainbow on the day of the accident. Defendants assert that the dispute over employment can be resolved by applying the doctrine of judicial estoppel. Defendants assume that, if plaintiffs are barred from arguing that Steve was employed by Rainbow, then Steve must have been employed by United on the day of the accident. Thus, defendants assert, if United was Steve's employer, then United should be entitled to the exclusive remedy defense under the Act (820 ILCS 305/5(a) (West 2000)). We first examine whether the exclusive remedy defense is applicable here.

The Act "was designed to provide speedy recovery without proof of fault for accidental injuries" that occur in the workplace during the course of work. Fregeau v. Gillespie, 96 Ill. 2d 479, 486 (1983). The compensation provided by the Act is the exclusive remedy for such injuries. 820 ILCS 305/5(a) (West 2000). Thus, injured employees are not permitted to seek and recover both compensation under the Act and common-law damages. Collier v. Wagner Castings Co., 81 Ill. 2d

229, 241 (1980). However, the supreme court has stated that an employee, "out of caution or uncertainty," may file a common-law action against an employer, though he has already filed a workers' compensation claim. Fregeau, 96 Ill. 2d at 485; Rhodes v. Industrial Comm'n, 92 Ill. 2d 467, 471 (1982). This enables the employee who is uncertain of the proper basis of recovery to toll the statute of limitations on the civil action. Although Steve admitted filing for and voluntarily collecting some benefits, United denied that it was Steve's employer on the date of the accident and USLIC stopped the benefits on this basis. There was no settlement between Steve and defendants. Nor has there been a final award issued by the Industrial Commission and, according to defendants' workers' compensation counsel, an appeal is still pending. We fail to see how the denial of benefits under the Act could bar plaintiffs from thereafter trying to recover common-law damages.

We find Laffoon v. Bell & Zoller Coal Co., 65 Ill. 2d 437 (1976), to be instructive in this case. In Laffoon, the plaintiffs were the immediate employees of subcontractors that did not provide workers' compensation insurance. Each of the plaintiffs suffered an injury while working on his respective job. Consequently, the general contractor in each case was forced to pay the injured plaintiff's workers' compensation claim. The question that the Laffoon court faced was whether section 5(a) of the Act provided the general contractors with immunity from further litigation by the plaintiffs, as they had paid the plaintiffs' workers' compensation claims. The Laffoon court held:

"Accordingly, we must interpret section 5(a) as conferring immunity upon employers only from common law or statutory actions for damages by their immediate employees. To hold otherwise in light of the present factual situations would be violative of the injured employee's right to due process and equal protection of the laws." (Emphasis added.) Laffoon, 65 Ill. 2d at 447.

In light of Laffoon, if Rainbow was Steve's employer at the time of the accident, Steve would have the right to pursue a common-law suit against United. Although United paid some of Steve's workers' compensation claim, if United was not Steve's immediate employer, section 5(a) of the Act would not provide United with immunity from further litigation. Laffoon, 65 Ill. 2d at 447; see also Gray v. National Restoration Systems, Inc., 354 Ill. App. 3d 345, 354-55 (2004) (plaintiff was not judicially estopped from pursuing common-law action against defendant although he collected workers' compensation claim from defendant).

United took the position before the Industrial Commission that Steve was not its employee, and USLIC stopped workers' compensation payments on that basis. Now United asserts that Steve was its employee so that it cannot be sued under the common law. Defendants cannot now, when the occasion suits them, take an inconsistent position and claim the exclusive remedy provision. See Mortimer v. River Oaks Toyota, Inc., 278 Ill. App. 3d 597, 603 (1996). Accordingly, we find that the trial court did not err in refusing to grant defendants a directed verdict or a judgment n.o.v. on the basis of the exclusive remedy provision of the Act.

We observe that the question of who was Steve's immediate employer was essential to this case. It was defendants' burden to prove the affirmative defense that United employed Steve on the day of the accident (see Hindle v. Dillbeck, 68 Ill. 2d 309, 317-18 (1977)), and the jury's verdict shows that defendants did not meet that burden. Further, there was abundant evidence that Steve was not employed by United on the date of the accident. If defendants had submitted to the jury a special interrogatory asking if Steve was employed by United on the date of the accident, as the trial court recommended, and the jury had affirmatively answered it, then defendants might have a legitimate argument that the judgment was in error. However, defendants did not submit a special interrogatory on this point. We fail to see how defendants can claim that United was Steve's

employer, given the verdict against them. Additionally, because the jury did not find that United was Steve's employer on the date of the accident, United cannot claim that it was Steve's employer for purposes of the exclusive remedy defense of the Act. Accordingly, there was no basis on which to grant a directed verdict or a judgment n.o.v., regardless of defendants' judicial estoppel argument.

Nevertheless, we find that judicial estoppel does not apply to the facts of this case. We first note that plaintiffs maintain that defendants have waived this argument because they failed to specifically raise it in their motion for a directed verdict. We disagree. Although defendants did not move for a directed verdict based upon this argument, defendants did make a posttrial motion for judgment n.o.v. on this basis. Defendants' failure to include in their motion for a directed verdict the ground that Steve was judicially estopped from arguing that Rainbow was his employer on the day of the accident did not preclude defendants from seeking judgment n.o.v. on the same ground. See 735 ILCS 5/2--1202(b) (West 2000); Kennan v. Checker Taxi Co., 250 Ill. App. 3d 155, 159-60 (1993).

The doctrine of judicial estoppel provides that, when a party assumes a certain position in a legal proceeding, that party is estopped from assuming a contrary position in a subsequent legal proceeding. Grobe v. Hollywood Casino-Aurora, Inc., 325 Ill. App. 3d 710, 719 (2001); People v. Coffin, 305 Ill. App. 3d 595, 598 (1999). For the doctrine to apply:

> "(1) the party must have taken two positions; (2) the positions must have been taken in separate judicial or quasi-judicial administrative proceedings; (3) the party must have intended the trier of fact to accept the truth of the facts alleged in support of the positions; (4) the party must have succeeded in asserting the first position and received some benefit from it; and (5) the two positions must be inconsistent." Boelkes v. Harlem Consolidated School District No. 122, 363 Ill. App. 3d 551, 557 (2006).

-12-

The parties dispute whether courts applying the doctrine must impose an additional requirement that the positions must be taken under oath. Compare Boelkes, 363 Ill. App. 3d at 557, with Ceres Terminals, Inc. v. Chicago City Bank & Trust Co., 259 Ill. App. 3d 836, 854 (1994) (where the court found that in order to invoke the doctrine, a party must show that the opponent took a contrary position under oath in a prior proceeding). Although we did not specifically determine that the oath requirement does not apply, it appears that we adopted that position in Boelkes. Regardless, we need not address this issue, because we find that the doctrine of judicial estoppel is not applicable for other reasons.

First, there is no showing that Steve was successful in asserting the first position and received some benefit in the first proceeding. Steve submitted the affidavit on May 16, 2000, and then voluntarily dismissed with prejudice his worker's compensation claim against Rainbow. Thus, he certainly did not benefit from the proceeding against Rainbow. Furthermore, at the time he signed the statement, USLIC already had terminated Steve's workers' compensation benefits, and the benefits were never reinstated. Thus, Steve did not benefit from the position in his workers' compensation claim against defendants. Moreover, Steve testified that he signed the statement under the belief that if he did not, he would risk losing some interim workers' compensation benefits that he had been receiving from United.

Second, the two positions are not inconsistent. Steve's statement that he was not working for Rainbow on the day of the accident did not determine his employment as a matter of law. Nor did it necessarily mean that United was his employer. The existence of an employment " 'relationship is primarily, in any given case, a question of ultimate fact, involving in its determination a conclusion derived from a consideration of all the evidentiary facts disclosed by the evidence, in connection with the application of principles of law to the consideration of the evidence.' " Morgan

Cab Co. v. Industrial Comm'n, 60 Ill. 2d 92, 97 (1975), quoting Lawrence v. Industrial Comm'n, 391 Ill. 80, 84 (1945). Some of the factors to be considered in determining whether an employer-employee relationship exists are: the right to control the manner in which the work is done, the method of payment, the right to discharge, the required skill level, and who provided the tools, materials, or equipment. Davila v. Yellow Cab Co., 333 Ill. App. 3d 592, 595-96 (2002). Steve's statement was conclusory and unsupported. It could not necessarily be relied upon, given that Steve is a layperson with no legal training and that, at the time he signed the statement, he had an overall IQ of 75, an impaired ability to make decisions, and the impression that he would lose workers' compensation benefits.

Finally, and most importantly, the doctrine of judicial estoppel is an equitable doctrine and cannot be applied where the party invoking it is making the same inconsistent claims. Defendants derived the benefit of not paying further compensation and then claimed that United was Steve's employer. "[T]he equitable maxim that 'he who comes into a court of equity must come with clean hands' " "assumes the suitor asking the aid of a court of equity has himself been guilty of conduct in violation of the fundamental conceptions of equity jurisprudence, and therefore refuses him all recognition and relief with reference to the subject matter or transaction in question." Mills v. Susanka, 394 Ill. 439, 444-45 (1946); see also Long v. Kemper Life Insurance Co., 196 Ill. App. 3d 216, 219 (1990) (the doctrine of "unclean hands" precludes a party from taking advantage of his own wrong). Defendants cannot complain that judicial estoppel precludes plaintiffs from bringing suit when they are guilty of the same inconsistent behavior. In sum, we find that the trial court did not err in refusing to grant defendants a directed verdict or a judgment n.o.v. on the basis of the exclusive remedy provision of the Act or the issue of judicial estoppel.

2. Tendered Workers' Compensation Defense Instruction

Defendants next argue that the trial court abused its discretion by refusing the tendered instruction on its affirmative defense that Steve was, at the time of the accident, the employee of United, and that pursuant to the Act, he is barred from suing his employer. "Generally, a trial court has discretion to determine the appropriate jury instructions, and its determination will be reversed only for an abuse of discretion." Ozik v. Gramins, 345 Ill. App. 3d 502, 520 (2003). We find that the trial court did not abuse its discretion in refusing to give the instruction.

Defendants' proposed nonpattern jury instruction No. 20-A, on the affirmative defense that Steve was barred from suing United by the exclusivity provision of the Act, stated that defendants had the burden of proving two elements: (1) that at the time of the accident, Steve was United's employee; and (2) that Steve collected workers' compensation benefits from United.

In De Rosa v. Albert F. Amling Co., 84 Ill. App. 3d 64 (1980), a case on point, the defendant also asserted the affirmative defense that the plaintiff's suit was barred by the exclusivity provision of the Act, and the defendant submitted the following instruction:

" 'In this case the defendant has asserted the affirmative defense that the plaintiff was at the time of the occurrence the employee of the defendant engaged in the line of his duty as an employee and that pursuant to the [Act], he is barred from suing his employer *** and may only recover damages from his employer for injuries sustained while engaged in the line of his duty as an employee by a proceeding for Workmen's Compensation before the Industrial Commission ***.

The defendant has the burden of proving this defense.

To determine whether or not the plaintiff was an employee of the defendant at the time of the occurrence, you must weigh the following factors:

First, whether the defendant directed and controlled the work done by the plaintiff;

Second, whether the defendant had the right to discharge the plaintiff;

Third, whether the defendant furnished the materials used by the plaintiff;

Fourth, whether the defendant controlled the manner in which the work was done by the plaintiff;

Fifth, whether the plaintiff is paid on a time basis or by the job.' " De Rosa, 84 Ill. App. 3d at 74-75.

The De Rosa court held that the proffered instruction was improper because it unduly emphasized particular matters by singling them out and ignoring other factors. In addition, the instruction did not state that the factors mentioned were not conclusive. Further, "the instruction[] erred in referring merely to the right to control and not to the right to control the details, manner and method by which the work was to be done." De Rosa, 84 Ill. App. 3d at 76.

"The test in determining the propriety of tendered instructions is whether the jury was fairly, fully, and comprehensively informed as to the relevant principles, considering the instructions in their entirety." Leonardi v. Loyola University of Chicago, 168 Ill. 2d 83, 100 (1995). Here, the proffered instruction would not have fully and comprehensively informed the jury of the relevant principles of the law. The proffered instruction completely misstates the law and is far more objectionable than the instruction offered in De Rosa. Under these circumstances, we find no abuse of discretion in failing to grant the instruction.

### 3. Tendered Primary Assumption of Risk Instruction

Defendants next contend that the trial court abused its discretion by refusing to instruct the jury on the affirmative defense of primary assumption of risk. Although primary assumption of risk is a complete defense, it applies only where "the risk of harm [to the plaintiff] is not created by the defendant but is inherent in the activity which the plaintiff has agreed to undertake. The plaintiff is

regarded as tacitly or impliedly agreeing to take his own chances such as where he accepts employment knowing that he is expected to work with a dangerous horse." Clark v. Rogers, 137 Ill. App. 3d 591, 594 (1985).

In Vanderlei v. Heideman, 83 Ill. App. 3d 158, 162-63 (1980), the supreme court set forth the basis of the defense:

"In an employment setting it has been stated that the defense of assumption of risk may be interposed 'where the risk was so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated it.' (Johnson v. Scandrett (1938), 296 Ill. App. 198, 201.) 'In its simplest and primary sense, assumption of risk means that the plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone.' (Prosser, Torts 440 (4th ed. 1971).) *** It is based on the theory that a plaintiff 'will not be heard to complain of a risk which he has encountered voluntarily, or brought upon himself with full knowledge and appreciation of the danger.' (Prosser, Torts 523 (4th ed. 1971). See also Illinois Pattern Jury Instructions, Civil, No. 13.01 (2d ed. 1971).) *** The doctrine has been applied to persons who by reason of being professionals are held to bear the risks of their profession. Thus, a jockey hired to ride in a single race was held to have assumed the risk of an injury caused by a fall in that race." Vanderlei, 83 Ill. App. 3d at 162-63.

We find no evidence that Steve voluntarily assumed the risk. Defendants created the dangerous condition and there was no inherent hazard in Steve's work. Jim had previously removed the barricade over the hole in the floor, and he told Steve that he would take care of having the hole covered or barricaded. Steve began his work, relying on Jim to take care of covering or barricading

the hole. Furthermore, Jim admitted that he was responsible for the safety of the workers at the site; that he knew that the workers could be distracted while they were working; and that an unprotected hole would be a dangerous condition. We do not find that the trial court abused its discretion in refusing to grant defendants an instruction on the primary assumption of risk defense.

### 4. Trial Court Errors

Defendants last contend that they were denied a fair trial when the trial court erroneously allowed the testimony of: (a) Ken Yotz, plaintiffs' safety expert, that Steve worked for Rainbow on the day of the accident; (b) John Adams, defendants' workers' compensation attorney, that Steve was not an employee of United; and (c) plaintiffs that United's workers' compensation coverage was suspended by USLIC because of Jim's misrepresentations.

### A. Testimony of Ken Yotz

Defendants contend that unfair prejudice resulted from Yotz's testimony that Steve worked for Rainbow, not United, because it "went beyond the bounds of expert testimony."

"In deciding whether to admit expert opinion testimony, the trial court must consider whether the testimony would aid the jury in understanding the facts." Soto v. Gaytan, 313 Ill. App. 3d 137, 146 (2000). In general, the factors a trial court will consider include the complexity of the subject involved, "the purpose for which the opinion is offered, its relation to the ultimate issue to be determined, and the danger of undue prejudice." Wade v. City of Chicago Heights, 295 Ill. App. 3d 873, 882 (1998). The "decision to allow an expert to testify on matters of opinion lies within the discretion of the trial court." Burns v. Michelotti, 237 Ill. App. 3d 923, 933 (1992). We will not reverse an erroneous ruling unless the error was prejudicial or the result of the trial was materially affected. Stricklin v. Chapman, 197 Ill. App. 3d 385, 388 (1990).

We do not find that the trial court abused its discretion in allowing Yotz to testify to whether he believed that Steve worked for Rainbow on the day of the accident. An expert witness may generally express an opinion as to the ultimate issue in a case. The test for whether to admit an expert's opinion on the ultimate issue is whether that opinion will aid the trier of fact to understand the evidence or determine a fact in issue. Nika v. Danz, 199 Ill. App. 3d 296, 314-15 (1990). In this case, Yotz's expertise on safety hazards in the workplace assisted the jury in understanding who was responsible for covering the hole. Moreover, he tied those facts that already had been presented to the jury to his knowledge and expertise in the way construction sites are run vis-a-vis the relationship between employer and employee in the construction-safety context. We note also that the trial court allowed Yotz's opinion because it was offered, in part, in response to defendants' expert's opinion that United was the controlling employer.

## B. Testimony of John Adams

Defendants next contend that they were denied a fair trial by the trial court's overruling their objections to Adams' testimony that Steve was not United's employee and by the trial court's denial of their motion in limine to bar that testimony. Adams was United's attorney before the Industrial Commission regarding matters involving Steve's accident and injuries. As United's attorney, he responded by letter to Steve's attorney and denied that United was Steve's employer. Adams testified at trial regarding this letter. Defendants now complain that Adams was not authorized to deny that Steve was United's employee; that his testimony was not a factual admission by United; and that he was without authority to waive the attorney-client privilege.

"[A] statement of an agent, when made in the exercise of his duties and pertaining to matters within the scope of his authority, may constitute an admission binding on the principal which can be introduced substantively against the principal." Werner v. Botti, Marinaccio & DeSalvo, 205 Ill.

App. 3d 673, 679 (1990). The trial court allowed Adams' statement to be admitted into evidence, subject to cross-examination. The statement was made in the exercise of Adams' duties and pertained to matters within the scope of his authority. Accordingly, we find no abuse of discretion in allowing Adams to testify regarding his statement that Steve was not United's employee and in denying defendants' motion in limine to bar that testimony.

### C. Testimony of Plaintiffs

Defendants last contend that they were denied a fair trial because the trial court allowed testimony by plaintiffs that Steve's workers' compensation benefits were suspended. Defendants contend that "[a]dmission of testimony on the suspension of comp benefits and the speculation about it was an abuse of discretion when the probative value, if any, is measured against unfair prejudice."

We find that defendants have waived their argument. Defense counsel did object to Kristi's testimony that Steve's workers' compensation attorney and the attorney for Rainbow told plaintiffs that Steve should sign the affidavit or his workers' compensation benefits would be suspended, but only on the ground that defendants were not parties to the conversation. Moreover, defense counsel then expressly asked the court for a limiting instruction telling the jury that defendants were not bound by that conversation. Defendants' specific objection to the admission of evidence waives their current argument. See People v. Bowen, 289 Ill. App. 3d 378, 386 (1997) (specific objection waives all grounds not asserted). Additionally, "the failure to specifically and timely object to certain testimony at the time it is presented waives the objection for purposes of review." Rice v. Merchants National Bank, 213 Ill. App. 3d 790, 798 (1991). Further, because defense counsel asked for a limiting instruction, he cannot argue that the instruction was inadequate to cure the error. See Auton v. Logan Landfill, Inc., 105 Ill. 2d 537, 543 (1984) (a party cannot complain of error to which it consented).

For the foregoing reasons, we affirm the order of the circuit court of Lake County.

Affirmed.

McLAREN, J., concurs.

JUSTICE KAPALA, dissenting:

I respectfully dissent. In my opinion, Steve availed himself of the benefits of the Workers' Compensation Act when he applied for and received benefits from United. Therefore, I believe that the exclusivity provision of the Act (820 ILCS 305/5(a) (West 2000)) bars plaintiffs from suing United in common-law negligence. Consequently, I would reverse the judgment of the circuit court.

Section 5(a) of the Act provides in pertinent part as follows:

"(a) No common law or statutory right to recover damages from the employer, his insurer, his broker, any service organization retained by the employer, his insurer or his broker to provide safety service, advice or recommendations for the employer or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury." 820 ILCS 305/5(a) (West 2000).

Our supreme court has long taken the position that a double recovery of compensation benefits under the Act and in a common-law tort suit is prohibited. Fregeau v. Gillespie, 96 Ill. 2d 479, 486 (1983); Rhodes v. Industrial Comm'n, 92 Ill. 2d 467, 471 (1982); Collier v. Wagner Castings Co., 81 Ill. 2d 229, 241 (1980). Application of the exclusivity provision of the Act does not hinge on whether the claimant was actually the employee, but on whether the claimant applied for and accepted benefits under the Act. Wren v. Reddick Community Fire Protection District, 337 Ill. App. 3d 262, 267

(2003). "[A]pplying for and accepting benefits under the Act does not transform a nonemployee into an employee." Wren, 337 Ill. App. 3d at 267. "Instead, it acts as a form of estoppel, denying a plaintiff who has availed herself of the benefits of the Act from thereafter asserting that she falls outside its reach." Wren, 337 Ill. App. 3d at 267. Consequently, the relevant inquiry for disposition of this appeal is whether Steve applied for and accepted benefits under the Act from United, not whether Steve was United's or Rainbow's employee.

Steve was injured on February 2, 1999. On May 4, 1999, he filed a workers' compensation claim against United. Steve thereafter received workers' compensation benefits from United until May 2000. Steve took additional affirmative steps in the Commission to ensure that United continued to pay benefits to him under the Act, which evinced his choice to elect a remedy under the Act. Steve admittedly dismissed his workers' compensation claim against Rainbow because someone told him that United would dispute its obligation to continue to pay benefits where Steve was asserting that Rainbow was his employer. As a result, the arbitrator made a finding that Rainbow was not Steve's employer. Ultimately, USLIC terminated its payment of benefits to Steve because James Fassbinder made material misrepresentations on the insurance application and at audit.

The majority states that "United denied that it was Steve's employer on the date of the accident and USLIC stopped the benefits on this basis." Slip op. at 10. To the contrary, the dispute over continued payment of benefits between USLIC and Fassbinder did not address United's legal status as Steve's employer. USLIC filed a declaratory judgment suit in federal court that sought to rescind its policy because of Fassbinder's material misrepresentations on the application for insurance. At the point benefits were stopped, USLIC was disputing its duty of coverage on that basis.

USLIC stopped paying the benefits almost simultaneously with Steve's dismissal of his claim against Rainbow. When he dismissed the claim against Rainbow, Steve did not know that USLIC had made the decision to terminate payment of benefits. It was after USLIC's decision to stop payment of benefits, and after the arbitrator's finding that Rainbow was not the employer, that Adams took the position in the Commission that United was not Steve's employer. This position was based on the premise that, if Rainbow was not Steve's employer, then United could not have borrowed Steve from Rainbow. Up until Steve dismissed his claim against Rainbow, saying Rainbow was not his employer, United did not dispute that Steve was covered under the Act. Therefore, I disagree with the majority that United has taken inconsistent positions that preclude it from claiming the protection of the exclusivity provision.

The majority concedes that Steve filed for workers' compensation benefits against United and received them. I believe that this concession requires a reversal of the trial court's orders denying the motion for a directed verdict and the motion for judgment n.o.v. This case is analogous to Zurowska v. Berlin Industries, Inc., 282 Ill. App. 3d 540 (1996). In Zurowska, the plaintiff was injured while working when her hand got caught in a strapping machine. Zurowska, 282 Ill. App. 3d at 541. She filed a claim in the Industrial Commission, and she also accepted temporary total disability benefits as well as medical benefits under the Act. Zurowska, 282 Ill. App. 3d at 541-42. Subsequently, she filed a lawsuit against her employer, alleging an intentional tort. Zurowska, 282 Ill. App. 3d at 545. She admitted filing for and accepting the workers' compensation benefits, but she argued that her lawsuit was not subject to dismissal, because the benefits she received were paid voluntarily by her employer. Zurowska, 282 Ill. App. 3d at 543. The trial court dismissed her suit, based upon the holding in Fregeau. Zurowska, 282 Ill. App. 3d at 541. The appellate court affirmed and held that the filing of the claim with the Industrial Commission, coupled with the receipt of

compensation under the Act, constituted a bar to a tort action. Zurowska, 282 Ill. App. 3d at 544. The appellate court stated that, if all the plaintiff had done was file her claim, her lawsuit would not be barred. Zurowska, 282 Ill. App. 3d at 544. "However, she also accepted temporary total disability payments pursuant to the Act." Zurowska, 282 Ill. App. 3d at 544. This evinced her election to proceed under the Act because she actively pursued a remedy in the Industrial Commission. Zurowska, 282 Ill. App. 3d at 544.

In this case, Steve did what the plaintiff in Zurowska did. He filed an application for adjustment of claim against United for workers' compensation benefits, and he received approximately a year's worth of temporary total disability benefits following the filing of that claim. The majority notes that Steve and United never reached a final settlement in the Commission, nor did the Commission make an award. This is of no consequence, because in Zurowska the plaintiff's lawsuit was barred where she accepted temporary total disability benefits and did not reach a final settlement. The majority characterizes United's payments of benefits to Steve as "voluntary." The concept of "voluntary" payments excepting a plaintiff from the exclusivity provision of the Act arose in Copass v. Illinois Power Co., 211 Ill. App. 3d 205 (1991). In Copass, the plaintiff's husband was killed while working on an Illinois Power gas pipeline. Copass, 211 Ill. App. 3d at 207-08. Three days after the accident, Illinois Power informed the plaintiff that she was entitled to receive benefits under the Act, which Illinois Power paid. Copass, 211 Ill. App. 3d at 209. The plaintiff never filed a workers' compensation claim, executed a written settlement of claim, "or otherwise [took] any affirmative action before the Industrial Commission." Copass, 211 Ill. App. 3d at 209. Under those circumstances, the appellate court labeled Illinois Power's payments as voluntary and held that the plaintiff's common-law suit was not barred. Copass, 211 Ill. App. 3d at 211.

Copass is distinguishable from our case. Approximately three months after his accident, Steve filed for workers' compensation benefits against United. While it is not clear what, if any, benefits he received prior to filing his claim, it is clear he was paid and accepted benefits for 12 months after he filed his claim. It is also clear that Steve took additional affirmative steps in the Commission to assure his ongoing receipt of benefits when he dismissed his claim against Rainbow for the admitted purpose of pursuing his claim against United. Steve, therefore, took the express position that his injury was compensable under the Act and accepted benefits, thereby barring him from recovery in tort. See Copass, 211 Ill. App. 3d at 210. At the time of trial, Steve was still taking the position that his injury was compensable under the Act. He tried to reinstate his claim against Rainbow in the Commission, and that case was still pending in the Commission.

Instead of engaging in a Fregeau analysis, which would lead to the result I reach under Zurowska, the majority holds that the exclusivity provision of the Act is inapplicable under Laffoon v. Bell & Zoller Coal Co., 65 Ill. 2d 437 (1976). I believe that Laffoon is inapposite. The plaintiffs in Laffoon were employees of subcontractors that carried no workers' compensation insurance. Laffoon, 65 Ill. 2d at 441-43. Each plaintiff was injured in the course of and arising out of his employment, and the general contractors paid workers' compensation benefits to the subcontractors' injured employees under section 1(a)(3) of the Act. Laffoon, 65 Ill. 2d at 441-42. Section 1(a)(3) of the Act provides:

> "Any one engaging in any business or enterprise referred to in subsections 1 and 2 of Section 3 of this Act who undertakes to do any work enumerated therein, is liable to pay compensation to his own immediate employees in accordance with the provisions of this Act, and in addition thereto if he directly or indirectly engages any contractor whether principal or sub-contractor to do any such work, he is liable to pay compensation to the employees of

-25-

any such contractor or sub-contractor unless such contractor or sub-contractor has insured, in any company or association authorized under the laws of this State to insure the liability to pay compensation under this Act, or guaranteed his liability to pay such compensation. ***

In the event any such person pays compensation under this subsection he may recover the amount thereof from the contractor or sub-contractor, if any, and in the event the contractor pays compensation under this subsection he may recover the amount thereof from the sub-contractor, if any.

This subsection does not apply in any case where the accident occurs elsewhere than on, in or about the immediate premises on which the principal has contracted that the work be done." 820 ILCS 305/1(a)(3) (West 2000).

Thus, in Laffoon, the general contractors' liability to pay compensation statutorily arose where the plaintiffs' immediate employers were not insured. In that situation, where the contractors paid benefits pursuant to section 1(a)(3) of the Act, our supreme court held that the plaintiffs were not barred from also suing the general contractors under the Structural Work Act. Laffoon, 65 Ill. 2d at 444. Our supreme court concluded that any other interpretation of section 1(a)(3) would result in the creation of an unconstitutional classification based upon the arbitrary circumstance of whose immediate employer carried insurance. Laffoon, 65 Ill. 2d at 444. The injured worker whose immediate employer carried worker's compensation insurance would be allowed to sue the general contractor for damages, while the similarly injured worker whose immediate employer did not have insurance would not be able to sue for damages. Laffoon, 65 Ill. 2d at 443-44. The holding in Laffoon thus involved an interpretation of section 1(a)(3) of the Act, which is not implicated in our case. Steve did not invoke section 1(a)(3) in seeking workers' compensation benefits from United.

Indeed, whether Rainbow (assuming it was Steve's immediate employer) was insured never was raised by the pleadings or the evidence. The majority stretches <u>Laffoon</u> beyond its boundaries by conferring immunity pursuant to section 5(a) of the Act upon employers only in the situation where they are sued by their immediate employees. I believe that this is contrary to the letter and spirit of the Workers' Compensation Act because it permits and encourages double recoveries by persons in plaintiffs' posture.

I also believe that the First District's decision in <u>Gray v. National Restoration Systems, Inc.</u>, 354 Ill. App. 3d 345 (2004), which construed section 5(a) the same way as the majority, was wrongly decided. I do not think we should follow it. I agree with the partial dissent in <u>Gray</u>.

For the foregoing reasons, I would reverse the judgment of the circuit court of Lake County.